IRA DANIEL TOKAYER, ESQ. (IT-4734)
Attorney for Plaintiffs
405 Lexington Avenue, 7th Floor
New York, New York 10174
(212) 695-5250

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

REUBEN TAUB, IRWIN L. ZALCBERG        :        15 Civ. 01366 (ALC)
and IRWIN ZALCBERG PROFIT SHARING
PLAN,                                 :

               Plaintiffs,    :

     - against -                     :        COMPLAINT

ARRAYIT CORPORATION, RENE SCHENA,     :
MARK SCHENA and TODD MARTINSKY,
                                      :
               Defendants.
                                      :
------------------------------------x

       Plaintiffs, Reuben Taub, Irwin L. Zalcberg and the Irwin Zalcberg Profit Sharing Plan, by their attorney, Ira Daniel Tokayer, Esq., as and for their Complaint herein, allege as follows:

## THE PARTIES

       1.   Plaintiff Reuben Taub ("Taub") is an individual residing in New York, New York.

       2.   Plaintiff Irwin L. Zalcberg ("Zalcberg") is an individual residing in Chicago, Illinois.

       3.   Plaintiff Irwin Zalcberg Profit Sharing Plan (the "Plan") is a trust created under § 401 of the Internal Revenue Code.  Zalcberg is the Plan's trustee and sole beneficiary.

4. Upon information and belief, defendant Arrayit Corporation ("Arrayit") is a corporation organized and existing under the laws of the State of Nevada with its principal place of business in Sunnyvale, California. It is a publicly traded company which trades under the stock symbol ARYC and, upon information and belief, conducts business both nationally and internationally.

5. Upon information and belief, defendant Rene Schena ("Rene") is an individual who resides in Sunnyvale, California, is Chief Executive Officer of Arrayit and Chairman of Arrayit's Board of Directors.

6. Upon information and belief, defendant Mark Schena ("Mark") is an individual who resides in Sunnyvale, California, is President of Arrayit and a member of Arrayit's Board of Directors. Rene and Mark are married to each other.

7. Upon information and belief, defendant Todd Martinsky ("Todd") is an individual who resides in Sunnyvale, California, is Chief Technology Officer of Arrayit and a member of Arrayit's Board of Directors. Todd is Rene's brother.

## THIS ACTION

8. This action was commenced in the Supreme Court of the State of New York, County of New York, and was removed by defendants to this Court pursuant to 28 U.S.C. § 1332(a) on the ground that the matter in controversy exceeds the sum or value of

$75,000, exclusive of interest and costs, and is between citizens of different States.

PLAINTIFFS' INVESTMENT IN ARRAYIT

9.   Upon information and belief, Arrayit is a life sciences technologies company involved in developing microarray technology, including diagnostic microarrays for the detection of food pathogens in meat, fish, produce and other foods (the "Food Safety Testing Products") and treatable diseases states such as pre-symptomatic ovarian cancer ("OvaDX"), among other products.

10.  In the period approximately October 2013 through November 2013, Taub invested approximately $900,000 in Arrayit through a private placement offering and the open market.

11.  In the period approximately May 2013 through January 2014, Zalcberg and the Plan invested approximately $1,000,000 in Arrayit through a private placement offering and the open market.

DEFENDANTS' OMISSIONS AND MISREPRESENTATIONS

12.  Upon information and belief, defendants have engaged in gross mismanagement, tax fraud and misfeasance in connection with the operation of Arrayit.

13.  Upon information and belief, from in or about 2005, Arrayit has failed to issue W-2s or 1099s to employees.

14.  Upon information and belief, from in or about 2005, Arrayit has failed to remit to the United States Treasury

payroll taxes withheld from Arrayit employees and instead held those funds for Arrayit's use.

15. Upon information and belief, Arrayit's failure to pay the United States Treasury the funds withheld from Arrayit employees constitutes wage theft and tax fraud.

16. Upon information and belief, board members such as defendants who knew of these actions or learned of them but failed to remedy them can be personally liable for 100% of the tax liability and can face criminal prosecution, fines and imprisonment.

17. Upon information and belief, defendants' knowledge of and/or failure to remedy Arrayit's failure to issue W-2s or 1099s and/or remit payroll taxes has endangered the viability of Arrayit.

18. Defendants did not disclose to Taub, Zalcberg or the Plan Arrayit's failure to properly issue W-2s or 1099s and/or remit payroll taxes withheld from Arrayit employees.

19. In or about 2013, when Taub, Zalcberg and the Plan invested in Arrayit, they were not aware of Arrayit's failure to properly issue W-2s or 1099s and/or remit payroll taxes withheld from Arrayit employees.

20. In conference calls and in writing during the period June or July 2013 to January 2014, to induce investment in Arrayit, Mark and Rene repeatedly misrepresented to Taub,

Zalcberg and the Plan that Arrayit owned 100% of the intellectual property and all rights relating to OvaDX except for sales and marketing rights which they were negotiating to re-acquire from Avant Diagnostics Inc. ("Avant") for a minimal amount of money.

21. In addition, in conference calls from June or July 2013 to January 2014, and an Executive Summary received by Taub, Zalcberg and the Plan no later than approximately October 17, 2013, to induce investment in Arrayit, defendants misrepresented that Arrayit's estimated costs to develop OvaDX was $1,000,000, later clarified to be $500,000, instead of Arrayit's true estimate for such costs of $2.1 to $3.1 million.

22. Furthermore, in a Private Placement Memorandum received by Taub, Zalcberg and the Plan no later than on or about October 17, 2013, to induce investment in Arrayit, defendants misrepresented that the expected uses of the proceeds of the private placement offering were for operating expenses when in fact such proceeds were used to pay down prior debt.

23. At the time Taub, Zalcberg and the Plan invested in Arrayit, they were not aware of Arrayit's true interest in OvaDX, Arrayit's true estimated development costs for OvaDX and Arrayit's intent to misuse the proceeds of the private placement offering.

24. Taub has suffered realized losses of over $360,000 in connection with his investment in Arrayit. Moreover, Taub

still owns 1,000,000 shares and 1,000,000 warrants that have substantially decreased in value since they were acquired.

25. Zalcberg and the Plan have suffered realized losses of over $500,000 in connection with their investment in Arrayit.

THE CONTRIBUTION AGREEMENT

26. On or about August 19, 2014, in exchange for Taub's discontinuance of a New York state action, and Taub and Zalcberg's assistance in funding the development and commercialization of the Food Safety Testing Products and other consideration, Arrayit entered into a Contribution Agreement (the "Agreement").

27. The signatories to the Agreement included Arrayit, Rene (as CEO of Arrayit), Mark, Todd, Taub and Zalcberg.

28. Pursuant to the § 1.1 of the Agreement, Arrayit agreed on November 14, 2014 (the "Closing Date") to contribute all assets relating to the Food Safety Testing Products to Array Molecular Corp. ("AM"), except for certain patents which were to be licensed to AM ("the "Assets"). AM is a company organized and incorporated under the laws of the State of Delaware which is 76% owned by Zalcberg or entities controlled by him.

29. Pursuant to the § 1.9(a) of the Agreement, Arrayit agreed to double the amount of Arrayit shares that could be purchased with each of the Outstanding Warrants set forth in

Exhibit G of the Agreement, including 1,000,000 warrants held by Taub, and modify the purchase price for the Arrayit shares subject to such warrants from 45 cents to 10 cents.

30. Pursuant to § 1.9(a)(iii) of the Agreement, Arrayit agreed within 30 days of the date of the Agreement to file with the Securities and Exchange Commission ("SEC") whatever registration statement was required or available for the underlying shares to be issued upon the exercise of the above warrants so that they would be freely tradeable with no restrictions.

31. Pursuant to § 1.9(a)(iii) of the Agreement, Arrayit agreed to issue 500,000 additional warrants to any person who paid the legal and other costs of such registration.

32. Pursuant to § 1.9(a)(iii) of the Agreement, Arrayit agreed that any person who paid the legal and other costs of the above registration would be reimbursed from the cash proceeds obtained from the exercise of any of the above warrants.

33. Pursuant to § 1.9(c) of the Agreement, Arrayit agreed, upon execution of the Agreement, to issue Zalcberg 5,000,000 shares of Arrayit common stock (1,000,000 of which, with Arrayit's knowledge, would belong to Taub) and a three-year warrant for the right to purchase 7,000,000 additional shares under certain terms and conditions.

34. Pursuant to § 5.2 the Agreement, Arrayit agreed that, for a period of six months from the date of the execution of the Agreement, it would not issue or agree to issue more than 3,000,000 additional equity securities except under certain conditions not applicable here.

DEFENDANTS' BREACHES OF THE CONTRIBUTION AGREEMENT

35. Defendants have wilfully refused to abide by virtually every material obligation of the Agreement on their part to be performed, despite due demand.

36. Specifically, in breach thereof, defendants have:
(A) failed on the Closing Date or any time thereafter to contribute the Assets to AM despite due demand while invoicing Zalcberg $518,053.00 for, inter alia, liabilities which, pursuant to § 1.5 of the Agreement, were to be assumed by AM only after the closing of said contribution and which invoice, upon information and belief, included charges for bogus expenses which were not incurred and/or were paid by third parties;
(B) failed to double the amount of Arrayit shares that may be purchased with the Outstanding Warrants and modify the purchase price for the Arrayit shares subject to such warrants to 10 cents;
(C) failed to file a registration statement with the SEC for the underlying shares to be issued upon the exercise of the above warrants;

(D) refused to issue 500,000 warrants to Taub to which he became entitled upon funding of the costs of the registration for the shares to be issued upon the exercise of the above warrants;

(E) failed to reimburse Taub from the cash proceeds received by Arrayit from the exercise of warrants under § 1.9 of the Agreement;

(F) refused to issue to Zalcberg 5,000,000 shares of Arrayit common stock and 7,000,000 warrants for the right to purchase 7,000,000 additional shares;

(G) refused to issue 1,000,000 shares (of the 5,000,000 that were promised to Zalcberg) to Taub;

(H) issued, during the six-month period following the date of the execution of the Agreement, convertible debentures worth at least $500,000, including a $78,000 debenture to LG Capital; and

(I) agreed, during the six-month period following the date of the execution of the Agreement, to issue convertible debentures worth an additional $1,000,000; among other things.

## AS AND FOR A FIRST CLAIM

37. Plaintiffs repeat and reallege the allegations set forth above as if fully set forth herein.

38. Plaintiffs and Arrayit entered into the Agreement.

39. Arrayit breached the Agreement.

40. Plaintiffs have performed all obligations of the Agreement on their part to be performed.

41. By reason of the foregoing, plaintiffs have been damaged in an amount to be determined at trial, including but not limited to no less than approximately $450,000 consisting of the value of the shares and warrants Arrayit failed to issue to Taub; approximately $1,500,000 consisting of the value of the shares and warrants Arrayit failed to issue to Zalcberg; approximately $25,000 for defendants' failure to reimburse Taub from the cash proceeds received by Arrayit from the exercise of warrants under § 1.9 of the Agreement; and approximately $250,000,000 consisting of the value of Zalcberg's percentage ownership of AM had the Assets been contributed by Arrayit to AM on the Closing Date.

## AS AND FOR A SECOND CLAIM

42. Plaintiffs repeat and reallege the allegations set forth above as if fully set forth herein.

43. Upon information and belief, and according to Arrayit's latest-filed 10-Q (as of September 30, 2014), Arrayit's working capital deficits and accumulated deficit together with the insufficiency of current available resources have created substantial doubt about Arrayit's ability to fund the Company's planned expenditures and continue as a going concern.

44. In addition, upon information and belief, Arrayit owes suppliers for previous shipments of goods and is in arrears on payments to its employees.

45. Upon information and belief, Arrayit's only substantial liquid asset is approximately 39,350,000 shares of Avant, 10,000,000 shares of which it intends as soon as legally possible to dividend to shareholders to the exclusion of Taub and Zalcberg.

46. Plaintiffs will suffer irreparable harm and have no adequate remedy at law in the event Arrayit dividends 10,000,000 Avant shares to the exclusion of Taub and Zalcberg; pledges Avant shares as collateral for additional funds as necessary to continue in business; and/or irreversibly issues freely-tradable stock to any person exercising debentures rights which were improperly issued in violation of the Agreement.

47. Accordingly, plaintiffs are entitled to a receiver and/or a temporary, preliminary and/or permanent injunction enjoining and restraining Arrayit from dividending 10,000,000 Avant shares to the exclusion of Taub and Zalcberg; pledging Avant shares as collateral; and/or issuing common stock to any person exercising debentures rights issued in violation of the Agreement, including LG Capital.

AS AND FOR A THIRD CLAIM

48. Plaintiffs repeat and reallege each of the allegations above as if fully set forth herein.

49. Defendants, through omissions and misrepresentations, induced plaintiffs to invest in Arrayit.

50. The omissions were material, made with the intention of deceiving plaintiffs and inducing them to invest in Arrayit.

51. The misrepresentations were false, made by defendants knowingly, in reckless disregard of the truth or negligently, with the intention of deceiving plaintiffs and inducing them to invest in Arrayit.

52. Plaintiffs were not aware of the material information omitted or the falsity of the misrepresentations, believed the misrepresentation to be true and relied upon, *inter alia*, the misrepresentation in investing in Arrayit.

53. But for defendants' omissions and misrepresentations, plaintiffs would not have invested in Arrayit.

54. Such omissions and misrepresentations were made by defendants knowingly, wilfully, wantonly and/or recklessly and in conscious disregard of plaintiffs' rights and/or involved such a high degree of moral turpitude such as to imply a criminal indifference to civil obligations.

55. As a proximate result of the foregoing, plaintiffs have suffered substantial losses, including but not limited to actual losses by Taub of over approximately $360,000; actual losses by Zalcberg and the Plan of over approximately $500,000;

plus the decrease in value of the Arrayit shares and warrants that Taub continue to own.

WHEREFORE, plaintiffs respectfully request that the Court enter Judgment in favor of plaintiffs and against defendants, jointly and severally: (I) for monetary damages in an amount to be determined at trial, but in all events not less than $252,835,000; (II) appointing a receiver and/or granting a temporary, preliminary and/or permanent injunction enjoining and restraining Arrayit from dividending 10,000,000 Avant shares to the exclusion of Taub and Zalcberg, pledging Avant shares as collateral and/or issuing common stock to any person exercising debentures rights issued in violation of the Agreement, including LG Capital; (III) punitive damages in an amount to be determined at trial; (IV) the costs and disbursements of this action, including a reasonable attorneys' fee pursuant to the Agreement and as permitted by law; and (V) for such other and further relief as to this Court may seem just and proper.

Dated:   New York, New York
         March 30, 2015

_____/s/_____
IRA DANIEL TOKAYER, ESQ. (IT-4734)
Attorney for Plaintiffs
405 Lexington Avenue, 7th Floor
New York, New York 10174
(212) 695-5250

Complaint B.wpd