Lewis P. Trippett (LT 2616)
HIGGINS & TRIPPETT
1120 Avenue of Americas
Fourth Floor
New York, New York 10036
Phone: (212) 840-8334
Fax:  (212) 840-8334
E-mail:  lptrippett@h-tlaw.com

Attorney for Defendants
Arrayit Corporation, Renee Schena,
Mark Schena and Todd Martinsky

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
REUBEN TAUB, IRWIN ZALCBERG
and IRWIN ZALCBERG PROFIT
SHARING PLAN,                                                             15 Civ. 01366 (ALC)

        Plaintiffs,

    -against-

ARRAYIT CORPORATION,
RENE SCHENA, MARK SCHENA
and TODD MARTINSKY,

        Defendants,
-----------------------------------------------------------X

## DEFENDANTS' MEMORANDUM OF LAW
## IN OPPOSITION TO PLAINTIFFS' MOTION FOR
## A PRELIMINARY INJUNCTION

Defendants Arrayit Corporation ("Arrayit"), Rene Schena, Mark Schena and Todd Martinsky, by their attorneys, Higgins & Trippett LLP, submit this Memorandum of Law in opposition to the Plaintiffs' motion for a preliminary injunction.

This memorandum is submitted together with the Declaration of Rene Schena dated April 27, 2015 (the "Schena Aff.") which sets forth the facts in opposition to the Plaintiffs' motion and to which the Court is respectfully referred.

Preliminary Statement

Plaintiffs seek a preliminary injunction prohibiting defendant Arrayit from issuing shares of its stock to lenders who loaned money to Arrayit[1] and have the option to convert their loans into shares of Arrayit under the terms of the loan agreements.

Plaintiffs motion should be denied in its entirety because; (i) Plaintiffs' application is wholly without merit; (ii) Plaintiffs have failed to demonstrate any harm that would result to them as a result of the issuance of said stock, much less "irreparable harm" required to obtain a preliminary junction; and (iii) the Plaintiffs have failed to join the lenders as parties to this application in violation of Rule 19(a) of the Federal Rules of Civil Procedure; (iv) the preliminary injunction requested would not preserve the status quo, it would harm Defendants and give Plaintiffs rights that they do not have under the existing agreement; and (iv) the balance of equities favor Defendants because the loans were necessary only because the Plaintiffs failed to supply the funding that they agreed to under the Contribution Agreement.

---

[1] The lenders and the amount loan are listed in the Schena Aff. at par. 11.

2

ARGUMENT

I.

**THE PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION IS WITHOUT MERIT AND MUST BE DENIED**

**A. Plaintiffs Claim Is Without Merit**

A preliminary injunction is a drastic remedy that should not be routinely granted.  Patton v. Dole, 806 F.2d 24 (2nd Cir. 1986).  A party seeking a preliminary injunction bears a heavy burden of demonstrating both a likelihood of prevailing on the merits and the existence of irreparable harm in the event that a preliminary injunction is not granted.  Random House, Inc. v. Rosetta Books, LLC, 283 F.3d 490 (2nd Cir. 2002); Merkos L'Inyonei Church v. Ostar Sifrei Lubavitch, Inc., 312 F.3d 94 (2nd Cir. 2002)

Plaintiffs' application fails on both counts.

The request for a preliminary injunction purportedly arises out of Plaintiffs' breach of contract claim, which is alleged as the first cause of action in the Plaintiffs' complaint.  (See, Complaint, Taub Aff, Ex. "B" pars. 35-41.)   Plaintiffs allege that Arrayit issued "convertible debentures" during the six month restricted period of the Contribution Agreement[2] (Par. 5.2, pg. 11 of the C.A.) and "agreed" during the six month period to "issue convertible debentures." (Complaint, par. 36(H) and (I)).

Plaintiffs nowhere claim any damage they allegedly sustained as a result of this claimed "breach" of the Contribution Agreement.  Paragraph 41 of the Complaint lists the damages claimed from the alleged breaches of the Contribution Agreement, but does not claim any

---

[2] References to the August 19, 2014 Contribution Agreement annexed as Exhibit "A" to the Taub Aff. herein will be designated as "C.A."

damage from the issuance of the "convertible debentures" to the lenders. Likewise, there is no mention of it in prayer for relief at the end of the Complaint (Complaint, pg. 13).

Thus, Plaintiffs bring to this Court an application for a <u>preliminary</u> injunction when their complaint does not seek <u>any</u> injunctive relief nor does it allege any damage to them as a result of the agreements with the lenders.

In this motion, however, Plaintiffs attempt to claim that the agreements with the lenders, which gave the lenders an <u>option</u> to receive payment in Arrayit stock which could not have been issued until <u>after</u> the restrictive period expired, violated the Contribution Agreement.

The Plaintiffs cannot allege any damage or basis for injunctive relief arising out of the agreement with the lenders, because it is clear that the agreement with the lenders in no way violated the Contribution Agreement. Par. 5.2 of the Contribution Agreement places certain limitations on the issuance of stock only for a six month period after the execution of the agreement. (C.A., par. 5.2 pg. 11). After February 19, 2015 there are no limitations on the issuance of Arrayit shares to anyone or for any amount.

Ms. Schena makes clear in her declaration that no shares were issued to any of the lenders until March 24, 2015, more than a month after the restrictive period contained in par. 5.2 expired (Schena Aff., par. 13).

Further, Ms. Schena makes it clear that for each loan, the lender did not have the right to convert to shares for a period of six months after the loan was made. Schena Aff., par. 13. If the loan was paid off before then (i.e., had the Plaintiffs come forward with funding) the conversion right was extinguished. At no time during the restrictive period did any lender have the right to convert its interest into Arrayit shares. Without a <u>present</u> right to convert the shares, the agreement did not constitute an "equity security" within the definition of 15 U.S.C. §78c(a)11).

Since no shares were issued during the restrictive period and no shares could be issued during the restrictive period, there was no breach of the Contribution Agreement.

Plaintiffs have shown the opposite of what they need to prove to support a preliminary injunction. They have shown that they most certainly will lose their "claim" that the issuance of shares to lenders after February 19, 2015 violated the Contribution Agreement – a "claim" for which they are unable to even articulate a basis for relief in their Complaint. Such a claim is not supported by any language in the Contribution Agreement and is merely an attempt to have this Court re-write the Contribution Agreement to impose restrictions that the parties did not agree to.

**B. Plaintiffs Are Unable to Demonstrate Any Irreparable Harm.**

Plaintiffs' motion for a preliminary injunction sets forth no more basis for "irreparable harm" than does their Complaint (which states none). Plaintiffs state nothing more than vague, conclusory and unsupported allegations regarding the "viability" of Arrayit if the shares to the lenders are requested and issued. As stated in the Arrayit's CEO in her affirmation, the issuance of less than 1.2 million shares to date to the lenders out of 56 million shares currently issued, hardly constitutes a threat to Arrayit's viability. (Schena Aff., par. 20).

Further, it is entirely within Plaintiff's power to prevent issuance of additional shares to the lenders by simply funding the amount that had to be borrowed because of Plaintiff's failure to raise funds. Plaintiffs' breaches of the Contribution Agreement are a larger financial challenge to Arrayit than the potential issuance of shares to lenders that Arrayit was forced to go to as a result of Plaintiff's defaults.

The financial "viability" cases that Plaintiff's cites are inapplicable to the instant case. In each instance, it was the plaintiff who was seeking an injunction to prevent actions by the defendant which, if taken, would threaten the viability of the plaintiff's business. In Five Star

5

Development Resort Communities LLC v. iStar RC Paradise Valley LLC, 2010 WL 1005169 (S.D.N.Y. 2010) a developer sought a preliminary injunction to prevent the lender from holding the developer in default on a construction loan.  The Court found that the lender's threatened actions would cause the project to halt and result in irreparable harm to the plaintiff, including possible loss of real property.  Janmort Leasing, Inc. v. Econo-Car Intern, Inc., 475 F. Supp. 1282, 1294 (S.D.N.Y. 1979) involved a car leasing business that was threatened with the loss of its franchise agreement by the franchisor.  Without the franchise, the Plaintiff had no business.  Similarly, in Roso-Lino Beverage Distributors, Inc. v. Coca-Cola Bottling Company of New York, Inc., 749 F.2d 124, (2nd Cir. 1984) the plaintiff was faced with the threatened termination of its distribution agreement with Coca-Cola, which termination would have put it out of business.  In RxUSA Wholesale, Inc. v. Department of Health and Human Services, 467 F. Supp.2d 285 (E.D.N.Y. 2006) the plaintiffs were a drug pharmaceutical companies who claimed that new government regulations, if implemented, would put them out of business.

     Here, the Plaintiffs, both wealthy investors/speculators, make no claim that they will be put out of business if Arrayit somehow fails as a result of issuing stock to lenders.  At most, they will suffer the loss of their investment – something that is well recognized as not constituting irreparable harm.  See, Parrott v. Pasadena Capital Corp, 1997 WL 13205 (S.D.N.Y. 1997); PCS Wireless LLC v. A to Z Wireless Solutions, 841 F. Supp.2d 649 (E.D.N.Y. 649).

     **C. Plaintiffs Have Failed to Join Necessary Parties to Obtain Injunctive Relief**

     By this application for an injunction, Plaintiffs seek to prevent the enforcement of an agreement between Arrayit and the lenders.  Yet, none of the lenders are parties to the Contribution Agreement, nor have they been given notice of this application.

A substantial right of the lenders would be impacted if a preliminary injunction was granted, therefore it is incumbent upon Plaintiffs to join them as parties to this application because incomplete as well as inconsistent relief may be granted unless the lenders, whom Plaintiffs seek to prevent from exercising their right of conversion, are included in Plaintiff's application for injunctive relief.  Fed. R. Civ. P. Rule 19(a).

Having failed to join necessary parties, the Plaintiffs' application must be denied.

### D.  The Preliminary Injunction Would Disrupt the Status Quo

One purpose of a preliminary injunction is to preserve the status quo pending resolution of the case.  Here, the injunction sought by Plaintiffs would have the opposite effect.  It would substantially disrupt the status quo, to the prejudice of Arrayit.

The current status of this matter is that Arrayit can issue its shares to anyone it wants in furtherance of its business purposes.  Nothing in the Contribution Agreement gives Plaintiffs the right to prevent Arrayit from continuing to find lenders/investors to fund the commercialization. Nothing prevents Arrayit from entering into new agreements with the existing lenders for the issuance of shares. The time during which Arrayit agreed not to issue shares to lenders or other investors has past -- and during that time, Arrayit did not issue any shares Plaintiffs provided no funding whatsoever.

If an entirely new restriction on issuing shares is ordered by this Court as a result of Plaintiff's application, Arrayit's status quo would be disrupted.  Its creditworthiness would be affected.  It would be more difficult to find other lenders and Arrayit would be forced to give <u>more</u> shares to the existing lenders (Schena Aff. par. 19, 20).

It is inappropriate to grant injunctive relief that alters the terms of an existing agreement. Such an injunction would alter the status quo.  See, Tom Doherty Associates, Inc. v. Saban Entertainment, Inc., 60 F.3d 27, at 35. (2nd Cir. 1995).

### E.  The Balance of Equities Favors Arrayit and not the Plaintiffs

Arrayit is the victim of Plaintiffs' defaults in their obligations.  Not only have the Plaintiffs refused to supply the funding as they agreed to do under the Contribution Agreement, Taub has actively worked to undermine and frustrate the commercialization of the food test (Schena Aff. 24-27).  It is only because of the Plaintiffs' actions that Arrayit was forced to go to alternative lenders.  Even then, Arrayit was careful to comply with the terms of the Contribution Agreement by not issuing, or agreeing to issue, shares of Arrayit to the lenders during the restrictive period.

Arrayit should not be punished for having to cover for Plaintiffs refusal to supply funding.  Plaintiffs should not be rewarded for their actions by enabling them to extend the restrictive period of the Contribution Agreement by preventing the issuance of shares to lenders. See, Estate of Lennon v Screen Creations, Ltd., 939 F. Supp. 287 (S.D.N.Y. 1996).

### II.

### PLAINTIFFS SHOULD BE REQUIRED TO POST AN UNDERTAKING OF AT LEAST $2 MILLION WHICH FUNDS SHOULD BE AVAILABLE TO PAY OFF THE LENDERS

Should this Court decide, despite Defendants' objections, to grant a preliminary injunction, the posting of a bond by Plaintiffs is appropriate pursuant to Federal Rules of Civ. Procedure Rule 65(c).  See, Corning Inc. v. PicVue Electronics Ltd., 365 F.3d 156 (2nd Cir. 2004).  In this case, Defendants urge that a bond in the amount of no less than $2 million (the amount Plaintiffs were supposed to raise) is appropriate.  Also, if an injunction prevents the

8

issuance of shares of Arrayit to the lenders, then this Court should direct that the bonded amount be available to pay off the loans to the lenders in the amounts listed in the Schena Aff., par. 11.

### Conclusion

The Plaintiffs application for a preliminary injunction should be denied in its entirety. If, however, this Court determines to grant a preliminary injunction, Plaintiffs should be required to post a bond in the amount of no less than $2 million and such funds shall be made available to pay off the lenders identified in the Affidavit of Defendant Rene Schena.

Dated:  New York, New York
       April 27, 2015

                                  HIGGINS & TRIPPETT LLP
                                  Attorneys for Defendants

By: _____
      Lewis P. Trippett (LT 2616)
1120 Avenue of Americas
Fourth Floor
New York, New York 10036
(212) 840-8334