UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X

Taub,                                                          :

                                        Plaintiff,            :          15 Civ. 01366

                    -against-                                 :          **ORDER**

                                                              :

Arrayit Corporation et al.,                                   :

                                        Defendants.           X
-------------------------------------------------------------- X

ANDREW L. CARTER, JR., United States District Judge:

| | |
|---|---|
| USDC SDNY | |
| DOCUMENT ELECTRONICALLY FILED | |
| DOC#: _____ | |
| DATE FILED: 3-29-17 | |

## I. INTRODUCTION

Plaintiff Reuben Taub settled a state court lawsuit that alleged fraudulent inducement of his investment in the life sciences technologies company Arrayit Corporation ("Arrayit"). As part of the settlement agreement, Taub and Irwin Zalcberg, co-plaintiffs in this federal lawsuit, executed releases of any past claims against Arrayit, and its directors and officers, in exchange for certain promises from the company. The plaintiff investors now sue Arrayit and members of its board of directors for breach of the settlement agreement and fraudulent inducement of their investments. They also seek appointment of a receiver and injunctive relief barring Arrayit from disposing of its shares, as well as money damages. Arrayit moves for partial dismissal of the operative complaint. For the reasons stated below, Arrayit's motion is granted in part and denied in part.

## II. BACKGROUND

Arrayit develops microarray technology for the detection of treatable diseases and pathogens in food products, among other applications. Amended Complaint ("Amend. Compl.") ¶ 9. In 2013, Plaintiffs Reuben Taub, Irwin Zalcberg, and the Irwin Zalcberg Profit Sharing Plan ("the Plan") collectively invested over two million dollars in the company. Id. ¶¶ 10-12. Taub's

most recent investment occurred on November 15, 2013, id. ¶; Zalcberg's on December 2, 2013, id. ¶ 11, and the Plan's on December 5, 2013, id. ¶ 12. On November 16, 2013, both Zalcberg and the Plan withdrew their prior investments under two rescission agreements. March 7, 2016 Declaration of Rena Schena in Support of Motion to Dismiss ("2016 Schena Decl."), Ex. C ("Rescission Agreement").[1]

Under the terms of the Rescission Agreements, Plaintiffs pledged to release Arrayit and its board of directors from any legal claims arising in relation to its investments up to that date. Id. ¶ 4. Specifically, the Rescission Agreements contain a release discharging Arrayit, "its managers, successors and assigns, predecessors in interest, principals, officers, directors, employees . . . from every action, charge, claim, right, liability or demand of any kind or nature, known or unknown . . . including but not limited to, any and all actions, charges, claims, rights, liabilities or demands which have arisen in connection with the undersigned's investment in the Company (including but not limited to any claims or principal, interest, return on capital, lost opportunities, lost revenues, lost profits or any other amounts) including the negotiation and entering into of this Agreement." Id. The Rescission Agreements also specifically provides that "if [they] file a Claim, or if a Claim is filed on [their] behalf, this Release shall constitute a complete release, discharge and defense to such Claim." Id. The Rescission Agreements provide for the application of Nevada law.

In August 2014, Taub alone brought suit in Supreme Court of the State of New York, County of New York (Index No. 652454/2014) against Rene Schena, Mark Schena, Todd Martinsky, and John Does 1-10 for fraudulently inducing him to invest through alleged "failure to

---

[1] On a motion to dismiss, courts may consider "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993). The releases signed by the investors evidence their possession of those documents, so the Court considers them here.

properly disclose withholding and other tax liabilities of the Company and misrepresentations concerning the development costs for, and the Company's ownership interest in OvaDX," a diagnostic technology for pre-symptomatic ovarian cancer. Affirmation of Lewis P. Trippett in Support of Motion to Dismiss ("Trippet Aff."), Ex. B ("2014 Summons").[2]

Taub settled the suit by signing a Contribution Agreement that obligated Arrayit to undergo internal restructuring and adhere to certain restrictions on issuance of stock. Amend. Compl. ¶ 44; Trippett Aff., Ex. C (Contribution Agreement), at ¶¶ 1.1, 1.9. One of those restrictions prohibited Arrayit from issuing or agreeing to issue more than 3,000,000 equity securities for a period of six months after the Contribution Agreement was signed. Amend. Compl. ¶ 52. Although Zalcberg was not a plaintiff in Taub's suit, he signed an identical Contribution Agreement. Both Contribution Agreements provide for the application of Illinois law.

As part of the agreements, Taub and Zalcberg committed to release any and all claims that they may have had against Arrayit, and its directors and officers, prior to August 19, 2014. Id. ¶ 1.9(d); 2016 Schena Decl., Ex. A ("Mutual Releases"). The Mutual Releases provided that the parties agreed to "hereby release, remise, and forever discharge the other . . . of and from all and any manner of actions, claims, [and] causes of action." The Mutual Releases further state, "the parties acknowledge that this is a general release." Schena Decl., Ex. A.

---

[2] The Court takes judicial notice of the summons and discontinuance of Taub's first suit as public filings that Taub himself references in his complaint. AC ¶ 44. See Kavowras v. New York Times Co., 328 F.3d 50, 57 (2d Cir. 2003) ("Judicial notice may be taken of public filings, and Kavowras's counsel acknowledged at oral argument that Kavowras had indeed filed the NLRB charge in question.") The Contribution Agreement by which Taub agreed to settle that suit—and which his current complaint alleges that Arrayit breached—is properly considered on this motion to dismiss because "plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint . . . ." Id. (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir.1991)).

3

Furthermore, Paragraph 1.9(b) of the Contribution Agreement states that "Reuben Taub agrees to dismiss Case Index number 652454/2014 in the Supreme Court of the State of New York, County of New York, as soon as practical after the execution of this Agreement." In accordance with his obligations under the Contribution Agreement, Taub filed a notice of discontinuance with prejudice of his fraud claims against Defendants on August 25, 2014. Trippet Aff., Ex. D ("Notice of Discontinuance").

On February 4, 2015, Taub alone commenced another action against Arrayit, as well as Arrayit's Chief Executive Officer and Chairperson of the Board of Directors, Rene Schena; Arrayit's President and member of the Board of Directors, March Schena; and Arrayit's Chief Technology Officer, Todd Martinsky. Trippett Aff., Ex. E ("2015 Summons"). In the new action, Taub alleged: (1) Arrayit's breach of the Contribution Agreement; (2) fraud regarding Arrayit's failure to properly disclose federal and state withholding and other tax liabilities and (3) fraud arising out of Arrayit's "misrepresentations" regarding "the development costs for an ownership interest in OvaDx." Trippett Aff., Ex. E ("2015 Summons"). The 2015 Summon demanded $5,900,000 in money damages and/or specific performance of the Contribution Agreement, as well as rescission of the Mutual Release for material breaches of the Contribution Agreement. Id.

The lawsuit was timely removed to this Court based upon diversity jurisdictions pursuant to a notice of removal filed on February 25, 2015. On March 31, 2015, Taub filed a complaint in the action. Trippett Aff., Ex. F (the "Complaint"). Without obtaining the consent of Defendants or leave of Court, the Complaint added two new plaintiffs, Zalcberg and the Plan. See Compl. ¶¶ 2-3. The Complaint asserted three causes of action. The first cause of action alleged breach of the Contribution Agreements and sought money damages. The second cause of action sought the appointment of a receiver and/or temporary, preliminary and/or permanent injunction. In a

4

departure from the 2015 Summons filed before removal, the Complaint does not seek rescission of the Mutual Releases executed by Plaintiffs, nor does it seek specific performance of the Contribution Agreements.  Trippett Aff., Ex. E.[3]

After an initial conference, Plaintiffs made an application by order to show cause, for an injunction to prevent Arrayit from issuing stock to lenders who had contracted for the right to receive loan repayments via the issuance of stock.  At a hearing held on April 29, 2015, the Court denied Plaintiff's motion for preliminary injunction, finding that Plaintiffs had failed to prove irreparable harm.  ECF No. 26.

At a June 24, 2015 conference, the Court granted Defendants leave to bring the instant motion for partial dismissal, and gave leave to Plaintiffs to serve an amended complaint.  Plaintiffs filed the Amended Complaint on June 29, 2015.  ECF No. 42.  The Amended Complaint alleges the same three causes of action as the Complaint:  (1) breach of the Contribution Agreement; (2) appointment of a receiver and/or injunctive relief, and (3) fraud.  The Amended Complaint adds additional paragraphs in support of Plaintiffs' fraud claims.  Amend. Compl. ¶¶ 13–39.

Defendants moved for partial dismissal of the Amended Complaint.  On February 26, 2016, the Court denied the motion without prejudice and requested briefing on the issue of the effect, if any, of the choice of law provisions in the Contribution Agreements and Rescission Agreements.

On March 7, 2016, Defendants filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) seeking dismissal of the third cause of action (for fraud) for failure to state a claim upon which relief may be granted; or, if the third cause of action is not dismissed, dismissal of the first cause of action for breach of contract, based on election of remedies.

---

[3] Plaintiffs' counsel stated in a letter to the Court dated June 12, 2015, that despite the allegation in the 2015 Summons, Plaintiffs would not seek rescission of the Mutual Releases or specific performance of the Contribution Agreement.  Trippett Aff., Ex. G, at 4.

Defendants also move for dismissal of: the second cause of action (for the appointment of a receiver and/or injunctive relief) for failure to state a claim for which relief may be granted; Plaintiffs' demand for the imposition of punitive damages; the Plan as a plaintiff in this action; Rene Schena as a defendant in this action. For the reasons set forth below, Defendant's motion to dismiss is GRANTED in part and DENIED in part.

### III. APPLICABLE LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). On a motion to dismiss, the Court accepts the plaintiffs allegations as true and draws all reasonable inferences in the plaintiffs' favor. Harris v. Mills, 572 F.3d 66, 71 (2d Cir.2009). However, in order to satisfy Rule 12(b)(6), plaintiffs must offer "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir. 2010). Ultimately, on a motion to dismiss "[t]he issue is not whether [the] plaintiff[s] will ultimately prevail but whether the claimant[s] [are] entitled to offer evidence to support the claims." Walker v. Schult, 717 F.3d 119, 124 (2d Cir. 2013) (internal quotations and citation omitted).

### IV. DISCUSSION

#### A. Plaintiffs' Fraud Claims Are Precluded

Defendants seek dismissal of Plaintiffs' third cause of action, which seeks money damages for fraud. Defendants assert that Plaintiffs are precluded from bringing a fraud action due to prior releases given to Defendants, as well as Plaintiff Taub's voluntary discontinuance with prejudice,

of a claim for fraud arising out of the same facts alleged in the Amended Complaint. Defendants also contend that even if Plaintiffs were not precluded from bringing the fraud claims on the foregoing grounds, the claims should nevertheless be dismissed for failure to allege fraud with particularity as required by Federal Rule of Civil Procedure 9(b). For the reasons set forth below, the Court dismisses Plaintiffs' claims for fraud based on preclusion; accordingly, the Court does not reach Defendants' second theory for dismissing Plaintiffs' fraud claims.

### i. Taub's fraud claim is barred by the doctrine of claim preclusion

Taub does not dispute that the 2014 lawsuit he brought against Defendants in New York State Supreme Court raised claims that were identical to the claims in the instant action. Trippett Aff., Ex. B (2014 Summons). Nor does Taub dispute that he settled the suit by signing a Contribution Agreement in which he committed to release any and all claims that he may have had against Arrayit prior to August 19, 2014. Id. ¶ 1.9(d); Schena Decl., Ex. A (Mutual Release). Specifically, Paragraph 1.9(b) of the Contribution Agreement states that "Reuben Taub agrees to dismiss Case Index number 652454/2014 in the Supreme Court of the State of New York, County of New York, as soon as practical after the execution of this Agreement." In accordance with his obligations under the Contribution Agreement, Taub filed a notice of discontinuance with prejudice of his fraud claims against Defendants on August 25, 2014. Trippet Aff., Ex. D (Notice of Discontinuance).

Taub's voluntary dismissal with prejudice of his previous fraud claims pursuant to the Notice of Discontinuance raises a question of claim preclusion. Because the dismissal here was filed in a New York state court, New York law controls as to its preclusive effect. See Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002) ("We apply . . . New York law in determining the preclusive effect of a New York State court judgment."). In relevant part, New

York's Civil Practice Law and Rules provide two ways to voluntarily discontinue an action: a notice of discontinuance signed by the plaintiff alone or a written stipulation signed by the attorneys of record of all parties. CPLR § 3217(a)(1)-(2). Taub chose the first route, filing the Notice of Discontinuance with prejudice on August 25, 2014. Trippet Aff., Ex. D.

"The general rule is that . . . discontinuance 'with prejudice' is afforded res judicata effect and will bar litigation of the discontinued causes of action." Pawling Lake Prop. Owners Ass'n, Inc. v. Greiner, 897 N.Y.S.2d 729, 732 (2d Dep't 2010); Chase Manhattan Bank, N.A. v. Celotex Corp., 56 F.3d 343, 345 (2d Cir. 1995) ("A voluntary dismissal with prejudice is an adjudication on the merits for purposes of res judicata.").

Defendants argue that the Notice of Discontinuance with prejudice precludes Taub's instant fraud claim. Taub avers that his previous dismissal with prejudice should not preclude the current fraud claim because Defendants failed to perform their obligations under the Contribution Agreement. The Court disagrees. Defendants' alleged nonperformance is irrelevant to Taub's voluntary choice to file his Notice of Discontinuance *with prejudice*. That condition was nowhere imposed under the Contribution Agreement, which committed Taub only to "dismiss" the case he had brought. Trippet Aff., Ex. C (Contribution Agreement), at ¶ 1.9(b) ("Reuben Taub agrees to dismiss Case Index number 652454/2014 in the Supreme Court of the State of New York, County of New York, as soon as practical after the execution of this Agreement.").

Furthermore, his decision to file a unilateral Notice of Discontinuance dismissing the action, as opposed to a negotiated stipulation, means that he alone bears responsibility for the prejudicial dismissal of his claims. His after-the-fact regret at having made that decision is no basis to disturb the finality of the judgment already entered on his fraud claims. Accordingly, Defendants' motion to dismiss Taub's fraud claim as claim precluded is granted.

### ii.   *Zalcberg's fraud claim is precluded by the Mutual Release*

Zalcberg does not dispute that he signed a Contribution Agreement that obligated Arrayit to undergo internal restructuring and adhere to certain restrictions on issuance of stock.  Amend. Compl. ¶ 44; Trippet Aff., Ex. C (Contribution Agreement), at ¶¶ 1.1, 1.9.  Nor does he dispute that as part of the Contribution Agreement, he committed to release any and all claims that he may have had against Arrayit, and its directors and officers, prior to August 19, 2014.  Id. ¶ 1.9(d); Schena Decl., Ex. A (Mutual Release).  Rather, Plaintiffs assert that the parties did not intend for the Contribution Agreement or Mutual Release to be "binding in the absence of [D]efendants' performance" of the internal restructuring and adherence to certain restrictions on issuance of stock.  Pl.'s Opp. Br. at 14-15.  For the reasons set forth below, Plaintiffs' claim is not tenable.

The Contribution Agreement calls for the application of Illinois law.  As a federal court sitting in diversity, the Court is bound to apply the choice of law rules of the state in which the case was brought.  Klaxon Company v. Stentor Electric Manufacturing Co., Inc., 313 U.S. 487, 496 (1941). Therefore, New York's choice of law rules applying to contract are binding on this Court.

New York law is unambiguous on the matter of express choice of law provisions in a contract.  "Applying New York conflict of laws principles, absent fraud or violation of public policy, contractual selection of governing law is generally determinative so long as the State selected has sufficient contacts with the transaction."  Klitzman v. Bache Halsey Stuart Shields Inc., 1985 WL 1984, at *2 (S.D.N.Y. June 27, 1985) (quoting Hawes Office Systems, Inc. v. Wang Laboratories, Inc., 537 F. Supp. 939 (E.D.N.Y. 1982)).

Here, the parties have manifested their intent that the Contribution Agreement be governed by Illinois law.  Trippet Aff., Ex. C (Contribution Agreement), at § 8.5.  The parties have not

alleged that the application of Illinois law would effect a fraud or violate New York public policy. Furthermore, Illinois has ample contacts with the transaction. Z Investors LLC, incorporated as Zalcberg Investors LLC, a signatory to the Agreement, was an Illinois company; the incorporator of Array Molecular, the entity to receive Assets under the Agreement, was in Illinois; and the Agreement was negotiated in Illinois by both parties' attorneys who were located there. Taub Dec., ¶ 16; Exs. L and M. Therefore, the express contractual provision in the Contribution Agreement electing Illinois law is controlling and will be given effect by the Court.

Under Illinois law, a court reviewing a release "appl[ies] contract law principles because a release is a contract. Farm Credit Bank of St. Louis v. Whitlock, 144 Ill.2d 440, 447 (1991). Pursuant to contract law principles, the court's "primary objective, therefore, is give effect to the parties' intent." Gallagher v. Lenart, 226 Ill.2d 208, 232 (2007). "A court must initially look to the language of a contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent." Id. at 233. The court construes the whole contract at issue and does not determine the intent of the parties from isolated provisions standing alone. Id. Clear and explicit written agreements that are unambiguous will be enforced as written without the assistance of extrinsic or parol evidence. Rakowski v. Lucente, 104 Ill.2d 317, 323 (1984). The court may only resort to extrinsic evidence to determine the parties' intent where a contract is susceptible to more than one meaning. Gallagher, 226 Ill.2d at 233.

The terms of the Contribution Agreement and the Mutual Release are unambiguous. On its face, the Contribution Agreement plainly provides that the release was to be delivered "on the execution" of the Contribution Agreement. Trippet Aff., Ex. C (Contribution Agreement), at § 1.9(d). Furthermore, the Mutual Release provides that Zalcberg released Defendants of any actions, claims, or causes of action that predated the August 19, 2014 execution date of the Mutual

Release and Contribution Agreement. 2016 Schena Decl., Ex. A (Mutual Release).

Thus, the release provided by Zalcberg was not limited or conditioned on Defendants' performance of the Contribution Agreement, as Plaintiffs aver. Pl.'s Opp. Br. at 14-15. Rather, the parties exchanged mutual, unconditional releases upon the *execution* of the Contribution Agreement — precisely as the plain language of the Contribution Agreement and Mutual Release provide. The Amended Complaint asserts that the Contribution Agreement and release were executed on August 19, 2014. Amend. Compl. ¶ 44. Thus, accepting Plaintiffs' factual allegations as true and drawing all reasonable inferences in their favor, Zalcberg's fraud claim is precluded by the release.

### iii. The Plan's fraud claim is partially precluded by the Mutual Release and subject to arbitration

The Plan does not dispute that it purchased shares in Arrayit pursuant to a private placement memorandum. Amend. Compl. ¶ 12; 2016 Schena Aff., Ex. A ("Private Placement Memorandum"). Nor does the Plan dispute that the investments it made pursuant to the private placement memorandum were rescinded pursuant to a rescission agreement Zalcberg signed on behalf of the Plan on November 19, 2013. 2016 Schena Decl., Ex. C (Rescission Agreement), at ¶ 4. Under the terms of the Rescission Agreement, the Plan pledged to release Arrayit and its board of directors from any legal claims arising in relation to its investments up to that date. Id. ¶ 4. Specifically, the Rescission Agreement contains a release discharging Arrayit, "its managers, successors and assigns, predecessors in interest, principals, officers, directors, employees . . . from every action, charge, claim, right, liability or demand of any kind or nature, known or unknown . . . including but not limited to, any and all actions, charges, claims, rights, liabilities or demands which have arisen in connection with the undersigned's investment in the Company (including but

not limited to any claims or principal, interest, return on capital, lost opportunities, lost revenues, lost profits or any other amounts) including the negotiation and entering into of this Agreement." Id. The Rescission Agreement also specifically provides that "if [they] file a Claim, or if a Claim is filed on [their] behalf, this Release shall constitute a complete release, discharge and defense to such Claim." Id. The Rescission Agreement calls for the application of Nevada law. Id. ¶ 4.

Defendants assert that this release, "at a minimum, prevents claims of fraud by the Plan for any acts committed prior to the date of the release," November 19, 2013. Dfdts.' Br. at 17. Plaintiffs do not address this argument.

For the reasons set forth above, the Court is bound to apply New York's choice of law rules. Under those rules, the parties have manifested their intent that the Rescission Agreement be governed by Nevada law. Rescission Agreement ¶ 5. The parties have not alleged that the application of Nevada law would effect a fraud or violate New York public policy. Furthermore, Nevada has ample contacts with the transaction as Arrayit is a Nevada corporation. Amend. Compl. ¶ 4. Therefore, the express contractual provision in the Rescission Agreement electing Nevada law is controlling and will be given effect by the Court.

Under Nevada law, a court reviewing a release applies contract law principles. Renshaw v. Renshaw, 96 Nev. 541, 543 (1980). An unambiguous contract is construed from the plain language of the document. Id. Where there is no limiting language in the release, the release "settle[s] all rights" the party had prior to signing the release. Id.

Here, the terms of the Rescission Agreement are unambiguous. On its face, the Rescission Agreement plainly provides that the Plan released Defendants of any actions, claims, or causes of action that predated the November 19, 2013 execution of the Rescission Agreement. The Amended Complaint lists only a handful of specific acts allegedly committed by Defendants after

the execution date:

- On November 20, 2013, Rene Schena sent an email to Zalcberg, in his capacity on behalf of the Plan. In the email, she attached a marked-up version of a November 2013 Equity Research paper prepared by Murphy Analytics, containing her tracked changes. Amend. Compl. ¶ 26(XII). The email allegedly intentionally and falsely misrepresented that Arrayit owned the microarray-based test for ovarian cancer, the OvaDX registered trademark, and all rights relating thereto, except for sales and marketing rights. Amend. Compl. ¶ 26(XIII).
- On December 21, 2013, Mark and Rene Schena met with Zalcberg, Taub, and other investors at the Fairmont Hotel in Chicago, IL. During the meeting, Mark and Rene Schena intentionally and falsely misrepresented that Arrayit owned the microarray-based test for ovarian cancer, the OvaDX registered trademark, and all rights relating thereto, except for sales and marketing rights. Amend. Compl. ¶ 26(XIII).
- In order to induce Zalcberg to invest on behalf of the Plan, on December 16, 2013, Arrayit, through March Schena made an intentionally false and misleading representation in a draft term sheet emailed to someone named Sid Taubenfeld, which stated that Arrayit's estimate for the cost of obtaining FDA approval for OvaDx was $2 million. Amend. Compl. ¶ 20(I).
- In order to induce Zalcberg to invest on behalf of the Plan, on August 6, 2014, Rene Schena represented in an agreement with Avant Diagnostics Inc. that Arrayit's estimate for the cost of obtaining FDA approval for OvaDx was $3.1 million. Amend. Compl. ¶ 20(II).
- In order to induce Zalcberg to invest on behalf of the Plan, during her August 11, 2014 telephone conversation with Zalcberg's attorney, Rene Schena represented that Arrayit's estimate for the cost of obtaining FDA approval for OvaDx was $2.1 to $3.1 million. Amend. Compl. ¶ 20(III).

Defendants contend that any fraud claim the Plan might have as a result of these allegations is subject to a mandatory mediation/arbitration in Nevada based on a mediation/arbitration clause in the private placement memorandum. 2016 Schena Aff., Ex. A ("Private Placement Memorandum"). Plaintiffs aver that Defendants have waived mediation/arbitration. The Court disagrees.

A party may "impliedly waive its right to enforce a contractual arbitration clause when it 'engages in protracted litigation that results in prejudice to the opposing party.'" In re Currency Conversion Fee Antitrust Litig., 361 F. Supp. 2d 237, 257 (S.D.N.Y. 2005) (quoting S & R Co. of Kingston v. Latona Trucking, 159 F.3d 80, 83 (2d Cir. 1998)). Bringing a motion to dismiss and conducting discovery over objections does not constitute a waiver of an arbitration clause. See Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc., 754 F.2d 457, 461 (2d Cir. 1985) (no waiver

where a party raises arbitration in its first response to the pleadings); Rush v. Oppenheimer & Co., 779 F.2d 885, 889 (2d Cir. 1985) (holding that eight-month delay, motion to dismiss, and conduct of discovery were not sufficient to support a conclusion of waiver by defendants of contractual right to arbitrate). Here, Defendants brought a motion to dismiss and sought to stay discovery in this action, pending the determination by the Court on the motion to dismiss but was ordered to proceed.   On that basis the Court finds that Defendants have not waived their right to mediation/arbitration under the Private Placement Memorandum.  Thus, any fraud claim the Plan might have should be stayed pending completion of mandatory mediation and arbitration.

### B. Defendant Rene Schena is Dismissed from the Action

Defendants assert that Rene Schena should be dismissed as a defendant in this action on the grounds that she was not a party to the contract sued upon and because there are no factual allegations in the Amended Complaint that support a cause of action against her. Plaintiffs do not contest that Rene Schena was not a party to the Contribution Agreement; in fact, the Amended Complaint is completely silent with regard to Rene Schena and the first cause of action. Therefore, Plaintiffs have failed to plead sufficient facts to state a claim against Rene Schena for breach of contract.

Defendants also move to dismiss Plaintiffs' third claim for fraud as it applies to Defendant Rene Schena.  A review of the Amended Complaint demonstrates that Plaintiffs fail to make any specific allegations that Rene Schena fraudulently induced Plaintiffs to invest in Arrayit.  Instead, Plaintiffs' entire theory of liability is predicated on her personal liability for fraudulent acts or misrepresentations made in furtherance of the Arrayit's business. Pl. Opp. Br. at 10-11.  Because the Court has already found that Plaintiffs' fraud claims against all defendants are precluded, Rene Schena must be dismissed from the action.

### C. Plaintiffs Punitive Damages Claim Survives

Defendants seek dismissal of Plaintiffs' demand for an award of punitive damages on the grounds that Plaintiffs have failed to state a claim.

A court may award punitive damages on a fraud claim if a plaintiff has established that a defendant committed "gross, wanton or willful fraud or other morally culpable conduct." Borkowski v. Borkowski, 39 N.Y.2d 982 (1976).  As for the possibility of punitive damages on a contract claim, as stated in TVT Records v. Island Def Jam Music Group, 262 F.Supp.2d 188, 193–96 (S.D.N.Y. 2003), New York courts require a showing that a defendant's acts affected the

general public.  Whether a complaint meets either of the aforementioned standards "is generally 'a factual inquiry best resolved at trial after plaintiffs have presented their proof on the issue.'" See IMI Sys. Inc. v. Sterling Software, Inc., 1991 WL 222107, at *4 (S.D.N .Y. Oct. 18, 1991) (denying motion to dismiss) (quoting Savino v. E .F. Hutton, 507 F.Supp. 1225, 1244 (S.D.N.Y. 1981)).  Therefore, a court may reserve judgment on sufficiency of a punitive damages claim until after the facts of the case have been further developed.  Tomoka Re Holdings, Inc. v. Loughlin, No. 03 CIV. 4904 (NRB), 2004 WL 1118178, at *8 (S.D.N.Y. May 19, 2004).

Here, accepting Plaintiffs' factual allegations as true and drawing all reasonable inferences in their favor, it is not clear from the Amended Complaint whether Plaintiffs' grounds for asserting punitive damages are derived from their claims for fraud (which are precluded) or their claims for breach of contract.  Thus, the Court is unable to determine with certainty whether Defendants' conduct is actionable as an independent tort.  Under Fed. R. Civ. P. 15(a), leave "shall be freely given when justice so requires."  See Foman v. Davis, 371 U.S. 178, 182 (1962).  Plaintiffs shall amend the Amended Complaint to clarify their grounds for seeking the punitive damages and identify the exact allegations they believe give rise to the claim.

### D. Plaintiffs Have Pleaded Facts Entitling Them To Equitable Relief

The Court next takes up Defendants' application for dismissal of Plaintiffs' second cause of action, for the appointment of a receiver and or a temporary, preliminary and/or permanent injunction enjoining and restraining Arrayit from disposing of shares in the company.  First, Defendants assert that Plaintiffs do not have standing to seek appointment of a receiver.  Second, Defendants assert that the Amended Complaint fails to allege sufficient facts to support the appointment of a receiver.  Third, insofar as Plaintiffs' second cause of action seeks injunctive relief, Defendants move to dismiss the claim on the grounds that Plaintiffs have failed to allege facts demonstrating that they will suffer irreparable harm if injunctive relief is not granted.  Based on the analysis below, Defendants' motion to dismiss the Plaintiffs' claim for appointment of a receiver for lack of standing is denied.  Defendants' motion to dismiss the remaining injunctive relief sought by Plaintiffs is also denied.

A receiver may be appointed when it is necessary to protect a plaintiff's interests. The following considerations are relevant to a court's determination of whether a plaintiff has established the need for a receivership:

> Fraudulent conduct on the part of defendant; the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; the inadequacy of the available legal remedies; the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and, in more general terms, plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property.

U.S. Bank Nat. Ass'n v. Nesbitt Bellevue Prop. LLC, 866 F.Supp.2d 247, 249-50 (S.D.N.Y. 2012). Defendants have not moved to dismiss Plaintiffs' claims for breach of contract. Accepting Plaintiffs' factual allegations as true and drawing all reasonable inferences in their favor, Plaintiffs have asserted sufficient allegations to establish fraudulent conduct arising out of Defendants' breach of the Contribution Agreement. Based on assertions regarding Arrayit's working capital and accumulated deficits, and designation as a "going concern" (Amend. Compl. ¶ 61), Plaintiffs have also sufficiently alleged the imminent danger of the loss, diminution in value or destruction of Arrayit and assets in which Plaintiffs have an interest, such as the assets (as defined in the Contribution Agreement), the shares and warrants promised to Plaintiffs in the Contribution Agreement, and the Avant shares that would have been distributed to Plaintiffs had the shares and warrants under the Contribution Agreement been issued. These same facts speak to the possibility of irreparable injury in Plaintiffs' interests in the property. Therefore, Defendants' application to dismiss Plaintiffs' claim for receivership is denied.

Plaintiffs have also alleged sufficient facts to state a claim for injunctive relief. "[A] plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 156-157 (2010). The Amended Complaint asserts that:

- Arrayit's working capital deficits and accumulated deficit together with the insufficiency of current available resources have created substantial doubt about Arrayit's ability to fund the Company's planned expenditures and continue as a going concern.
- Arrayit shows decreasing revenues, no cash assets and an overdraft of $27,693 suggesting that the Company is bouncing checks.
- Arrayit owes suppliers for previous shipments of goods and is in arrears on payments to its employees.

16

- Arrayit's only substantial liquid asset is approximately 39,350,000 shares of Avant, 10 million of which it intends, as soon as legally possible, to dividend to shareholders to the exclusion of plaintiffs and/or borrow against.
- To enrich themselves at the expense of the other shareholders, including plaintiffs, in addition to recently awarding themselves $2,572,500 in equity for alleged "unpaid compensation" Defendants are seeking to execute a reverse split of the shares outstanding, which would increase their percentage ownership and ensure their control of Arrayit.
- Defendants have failed to hold annual shareholder meetings, failed to maintain minutes from Board of Directors meetings and have back-dated stock purchases and stock sales, in violation of SEC rules.
- Plaintiffs will suffer irreparable harm and have no adequate remedy at law in the event Arrayit dividends its Avant shares to the exclusion of Taub and Zalcberg; pledges Avant shares as collateral for additional funds as necessary to continue in business; irreversibly issues freely tradable stock to any person exercising debenture rights which were improperly issued; and/or executes a reverse split of the outstanding Arrayit shares.

These assertions, when read in the light most favorable to Plaintiffs, state a claim for an injunction. Defendants' motion to dismiss Plaintiffs' claim for injunctive relief is therefore denied.

### E.  The Plan Is A Proper Plaintiff

Defendants move to dismiss the Plan as a plaintiff in this action on the grounds that the Plan was improperly added as a party after the summons and the Plan was not a party to the Contribution Agreement upon which Plaintiffs are staking their breach of contract claim. In the event that any claim of the Plan is deemed viable, the claim or claims are subject to a contractual clause in the Rescission Agreement requiring mediation/arbitration to be conducted in Nevada.

Defendants' first argument, that the Plan was improperly added as a party, is without merit. Federal Rule of Civil Procedure 15(a) provides that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Federal Rule of Civil Procedure 20(a) permits the joinder of multiple plaintiffs if certain conditions are met. Rule 20(a) provides in relevant part:

> All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action.

Fed. R. Civ. P. 20(a). Courts have broad discretion in applying Rule 20 to reduce inconvenience, delay, and added expense to the parties and to the court, and to promote judicial economy. 7 Charles Alan Wright et al., Federal Practice and Procedure § 1653 at 410–12 (3d ed. 2001). The Supreme Court has stated that "[u]nder the Rules, the impulse is toward entertaining the broadest

possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." United Mine Workers of America v. Gibbs, 383 U.S. 715, 724 (1966) (citations omitted). Therefore, "[t]he requirements of Fed. R. Civ. P. 20(a) are to be interpreted liberally 'to enable the court to promote judicial economy by permitting all reasonably related claims for relief by or against different parties to be tried in a single proceeding.'" Viada v. Osaka Health Spa, Inc., 235 F.R.D. 55, 61 (S.D.N.Y. 2006).

Here, from the face of the surviving causes of action in the Amended Complaint, it is patently obvious that the Plan's claims arise out of the same transactions or occurrences as the claims brought by Plaintiff Taub and Plaintiff Zalcberg. It is also clear that the Plan's claims present common question of law and fact. Based on these considerations, it is apparent that judicial economy would be facilitated by joinder. Notably, Defendants do not dispute that the Plan's claims arise out of the same transaction or occurrence, present common questions of law or fact, or that settlement of the claims or judicial economy would be facilitated by joinder. In the exercise of discretionary power, the Court is disinclined to deviate from the clear mandate and general spirit of the Federal Rules that amendments to pleadings under Rule 15 and joinder under Rule 20. Defendants' assertion that the Plan was improperly added as a party after the summons is without merit.

Defendant next contends that the Plan must be dismissed as a plaintiff in this action because it was not a party to the contract sued upon. Defendant's second argument fails. It is well-established that under New York law, "an intended third-party beneficiary has standing to enforce an agreement entered into between others. A third party is a beneficiary when recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." In re Actrade Fin. Technologies, Ltd. Sec. Litig., 2012 WL 3966328 *6 (S.D.N.Y. Sept. 11, 2012).

Under § 1.9(c) of the Contribution Agreement, Arrayit expressly agreed to issue 5,000,000 shares and 7,000,000 shares "to Zalcberg or the Irwin Zalcberg Profit Sharing Plan." Plaintiffs allege that Arrayit breached this promise. Accordingly, Plaintiffs have asserted sufficient facts to support their assertion that the Plan is an intended third-party beneficiary of the Contribution Agreement. As a third-party beneficiary, the Plan has standing to sue and is therefore a proper party in this action.

Finally, Defendants argue that any claim by the Plan is subject to a mandatory mediation/arbitration in Nevada based on a clause in the Private Placement Memorandum. Plaintiffs aver that Defendants have waived mediation/arbitration. The Court disagrees. Plaintiff Plan's breach of contract claim and claims for injunctive relief are governed by the parameters of the Contribution Agreement. Therefore, those causes of action are properly before this Court. However, as noted in the earlier section discussing Plaintiffs' claims for fraud, the Plan's surviving claim for fraud is governed by the mandatory mediation/arbitration clause in the Private Placement Memorandum.

## V.     CONCLUSION

For the reasons described above, Defendants' motion to dismiss is GRANTED in part and DENIED in part. ECF No. 75. Specifically, Plaintiffs' third cause of action is DISMISSED. Defendants' motion to dismiss Plaintiffs' claims for the appointment of a receiver and injunctive relief is denied. Plaintiffs are ordered to amend the Amended Complaint to clarify their grounds for seeking the punitive damages and identify the exact allegations they believe give rise to the claim.

**SO ORDERED.**

**Dated:  March 29, 2017**
**New York, New York**

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**