USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 3/25/2020

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

**REUBEN TAUB, IRWIN L. ZALCBERG** and **IRWIN ZALCBERG PROFIT SHARING PLAN,**

                              **Plaintiffs,**

             **-against-**

**ARRAYIT CORPORATION, RENE SCHENA, MARK SCHENA** and **TODD MARTINSKY,**

                              **Defendants.**

**1:15-cv-01366 (ALC)**

**ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiffs Reuben Taub, Irwin L. Zalcberg and the Irwin Zalceberg Profit Sharing Plan (collectively, the "Plaintiffs") brought this action against Defendants Arrayit Corporation, Rena Schena, Mark Schena and Todd Martinsky (collectively, the "Defendants"), alleging breach of contract and fraudulent inducement of their investments. Before the Court is Plaintiffs' motion for reconsideration on the Court's order denying in part and granting in part Plaintiffs' summary judgment. *See* Order dated August 20, 2019, ECF No. 190. For the reasons stated below, Plaintiffs' motion is **GRANTED** in part and **DENIED** in part.

## BACKGROUND

The facts of the case were fully set forth in the Court's August 2, 2019 Order (the "Order"), ECF No. 190. Accordingly, familiarity with the facts is assumed and the summary to follow will only highlight facts necessary for the motion presently before the Court. This case concerns a contractual dispute over Plaintiffs' investment in Arrayit, a life sciences corporation. Specifically, on August 19, 2014, the Parties entered into a Contribution Agreement ("Agreement"). *See* Pls.' Ex. F, ECF No. 171. Under the agreement the Defendants were: (1) required to, on closing, contribute to Array Molecular Corp. ("AM") assets and licenses related

1

to the Food Testing Product ("Product"), *see* Pls.' Ex. F, §§ 1.1, 1.2, 1.3, 5.1.; (2) required to double, modify or issue shares and warrants, *see id.* § 1.9; (3) required to file a registration statement, *see id.* § 1.9(a)(iii); and prohibited from issuing any equity securities for six months, *see id.* § 5.2. In exchange, Plaintiff Taub voluntarily dismissed a prior lawsuit commenced in New York state court and Plaintiffs released all of their previously existing claims. Additionally, Z Investors LLC, a nonparty, organized AM for the purposes of raising funds to commercialize the Product. *See* Pls.' Ex. §§ C, D, 1.7(b).

On September 4, 2018, Plaintiffs moved for partial summary judgment. The Court denied in part and granted in part Plaintiffs' motion, finding that there were genuine issues in fact concerning whether Plaintiff had substantially performed under the contract. Plaintiffs' then filed the present motion for reconsideration, in which they argue the Court erroneously conflated their identity with that of AM.

## LEGAL STANDARD

### I.  Motion for Reconsideration

Local Rule 6.3 provides the standard for a motion for reconsideration. This District has repeatedly stated that a motion for reconsideration "is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Sigmon v. Goldman Sachs Mortgage Co.*, 229 F. Supp. 3d 254, 257 (S.D.N.Y. 2017) (citations omitted); *see also Word v. Croce*, No. 00 Civ. 6496, 2001 WL 755394, at *3 (S.D.N.Y. July 5, 2001) (citations omitted) ("Local Rule 6.3 should be narrowly construed and strictly applied . . ."). "A motion for reconsideration should be granted only when the [movant] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*,

2

729 F.3d 99, 104 (2d Cir. 2013). Accordingly, a motion for reconsideration should be denied if the moving party seeks to present "the case under new theories" or otherwise take a "second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citation omitted); *see also Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (a motion for reconsideration should be denied when "the moving party seeks solely to relitigate an issue already decided.").

## II. Motion for Summary Judgment

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). There is no issue of material fact where the facts are irrelevant to the disposition of the matter. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (holding that a fact is material if it would "affect the outcome of the suit under governing law"). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

In deciding a summary judgment motion, courts must construe the admissible evidence—including affidavits, deposition transcripts, or other documentation—in the light most favorable to the non-moving party and draw all reasonable inferences in her favor. *Niagara Mohawk Power Corp. v. Jones Chemical Inc.,* 315 F.3d 171, 175 (2d Cir. 2003). Courts may not assess credibility, nor may they decide between conflicting versions of events, because those matters are reserved for the jury. *Jeffreys v. City of New York,* 426 F.3d 549, 553-54 (2d Cir. 2005). However, "[t]he mere existence of a scintilla of evidence in support of the [the non-moving party's] position will be insufficient; there must be evidence

on which the jury could *reasonably* find for the [the non-moving party's]." *Id.* (quoting *Anderson,* 477 U.S. at 252).

## DISCUSSION

I.  **Breach of Contract**

According to § 8.5 of the Contribution Agreement, the agreement is to be interpreted pursuant to the laws of the State of Illinois. Pls.' Ex. F, § 8.5. Under Illinois Law, to state a claim for breach of contract a plaintiff must plead "(1) the existence of a valid and enforceable contract; (2) its performance of the contract; (3) defendant's breach of the contract; and (4) that it was damaged as a result of the breach." *Facility Wizard Software, Inc. v. Se. Tech. Servs., LLC*, 647 F. Supp. 2d 938, 946 (N.D. Ill. 2009) (citing *Priebe v. Autobarn Ltd.,* 240 F.3d 584, 587 (7th Cir. 2001)).

In this case, the Parties agree that there is a valid and enforceable contract; accordingly, the discussion to follow will focus on the second, third and fourth elements. Regarding the second element, the Parties are in dispute concerning whether the contract obligated Plaintiffs to fund the commercialization of the Products prior to closing. Under § 1.7(b) Z Investors LLC was to "acquir[e] 2,204,000 shares of A-1 Stock simultaneously with the contribution of the Assets and Arrayit Patents License." Contribution Agreements § 1.7(b). Z Investors LLC also "agreed to use its best efforts to raise by selling interests in Z and to contribute to AM up to $2,00,000 as a holder of A-1 Stock as and when necessary to fund the commercialization of the Products." *Id* § 1.7(b).

Having considered Plaintiffs' arguments on reconsideration, the Court finds that

Plaintiffs' were not obligated to fund AM.[1] Instead, Z Investors LLC, a non-Party, was the entity that was responsible for funding AM. Although Defendants state, and Plaintiffs do not dispute, Plaintiffs control both AM and Z Investors LLC, Defendants do not raise a piercing the veil argument; as such, the Court cannot hold the individual Plaintiffs personally liable for obligations imposed on AM. Because Plaintiffs fulfilled their obligation under the Agreement to release all claims existing prior to the date of the Agreement and to voluntarily dismiss the prior New York state lawsuit with prejudice, the Court finds Plaintiffs have satisfied the second element.

Next, the Court must address whether Defendants breached the Agreement. Plaintiffs argue the Defendants breached its obligations to: contribute the Product; issue, double and modify shares and warrants; file a registration statement; and refrain from issuing equity securities for six months. In response, Defendants argue they did in fact issue the shares and warrants as required by the contract. Defendants further argue their failure to convey the Product and file a registration statement were excused by Plaintiffs' nonperformance. Moreover, Defendants contend that Z Investors, LLC, a party to the Agreement, is a fictious company; hence, Defendants assert, its inclusion in the contract, coupled with the inclusion of Zalcberg Investors (a nonparty to the Agreement) as a signatory, renders the Agreement unenforceable. Lastly, Defendants raise individual defenses concerning each obligation, including expiration of the agreement and substantial performance. The Court will address each of Defendants' argument in turn.

As a preliminary matter, Defendants' argument that their breaches are excusable due to Plaintiffs' alleged breach is unavailing. As stated above, Plaintiffs were under no obligation to

---

[1] The Court notes that in their motion for summary judgment briefings Plaintiffs conflate the identity of AM with themselves. *See e.g.*, Reply Br. at 4. ("Indeed, even after closing, plaintiffs were required only to use their 'best efforts' to raise money 'as and when necessary' . . .)

5

fund AM. Next, the Court finds that the substitution of Z Investors LLC with Zalcberg Investors does not render the contract unenforceable. The Northern District of Illinois' decision in *Bires v. WalTom, LLC*, is instructive. 662 F. Supp. 2d 1019, 1037–38 (N.D. Ill. 2009).

*Bires* involved a contractual agreement where the entity listed for the Defendant in the preamble to the contract did not exist ("WalTom Racing, LLC"), whereas the entity listed as the signatory of the contract ("WalTom, LLC") existed at the time the contract was executed. Because of this discrepancy, the plaintiff argued the defendant did not have the capacity to enter into a contract and as a result, the contract was void. *Id.* The court "decline[d] to place form over function and declare the agreement void based on a clear misnomer that did not prejudice" the plaintiff. *Id.* at 1038. The Court reached this conclusion in large part because "the signature line on the contract indicate[d] that it [wa]s being entered into by . . . the correct entity[, which] . . . was properly organized under Illinois law" and the plaintiff "fail[ed] to point to any evidence indicating that the technical deviation in the preamble and body of the contract affected anyone's understanding or performance under the contract or that two different entities were actually involved." *Id.* at 1037 (citing *Marquette Nat. Bank v. B.J. Dodge Fiat, Inc.,* 131 Ill.App.3d 356 (1985)).

Here, in a sworn affidavit, the attorney representing Arrayit in negotiating and executing the Agreement, Philip Ruben stated "[o]n signing, we were advised that Z Investors LLC was be re-named Zalcberg Investors LLC and incorporated under the laws of Illinois. We did not object to this modification because the name of the situs of incorporation was non-consequential and irrelevant to Arrayit." Ruben Declaration, ECF No. 184. Because Defendants were on notice of the naming discrepancy and did not object it, the Court cannot conclude that they suffered any prejudice by the inclusion of Z Investors LLC. Additionally, Defendants have not provided the

Court with any evidence that shows its inclusion, or the inconsistent naming, affected Defendants' understanding of the Agreement. Consistent with *Bires*, the Court declines to place form over substance, and finds the Agreement is not void due to the inclusion of Z Investors LLC or the naming inconsistencies in the Agreement.

Similarly, the Court finds Defendants' affirmative defenses as to each breach unavailing. First, concerning the obligations to contribute the assets related to the Product to AM, each contractual provision indicates such transfers were to occur on the closing date. *See* Pls.' Ex. F. §§ 1.1 ("On the closing, Arrayit, Mark and Todd and their Affiliates shall contribute to AM all of their assets except for the Patents which in any way relate or are associated with the Products (the "Assets")); 1.2 ("On Closing, Arrayit shall contribute to AM a license to use the Patented Technology . . ."); 1.3 ("On the Closing Date, the Assets and the Arrayit Patent Licenses contribute to A shall be free and clear of any liens, encumbrances, charges, claims, restrictions, pledges, security interest and impositions ("Encumbrances"), except for the Assumed Liabilities."). The Agreement further provides the "'Closing Date' shall be November 17, 2014 'or such other date as shall be agreed to." *Id.* at § 6.2. Because the Parties do not appear to have agreed to another closing date, the Court finds that November 17, 2014 was the closing date and that Defendants were obliged to provide the Product by that date. Defendants' failure to contribute the Product to AM on November 17, 2014, therefore was a breach.

Second, concerning Defendants' obligations to issue, modify or double shares and warrants upon execution of the Agreement, the Court finds the Defendants breached these responsibilities. Although Defendants argue that they issued shares and warrants as required by the Agreement, they have not offered sufficient evidence to allow a reasonable jury to conclude that these issuances occurred. *See Jeffreys,* 426 F.3d at 553−54. In support of their allegations,

7

Defendants rely on an email dated February 3, 2015 from William Sklar that states "[u]sed track changes to record my comments. As the shares and warrants have already been issued, d[o] we need to include an underwriting cost provision[?]" S*ee* Defs.' Ex. 3, ECF 176; *see also* Schena Declaration, ECF No. 176. However, Mr. Sklar's statement indicating the shares and warrants had been issued is explicitly contradicted by his sworn affidavit that states "Arrayit did not issue any shares or warrants under the Agreement. Arrayit also did not take a charge for the warrants to be issued under the Agreement in its subsequent financial statements for the period ended September 30, 2014." Pl.'s Ex Q. ¶ 11, ECF No. 171. Furthermore, Mr. Ruben's sworn affidavit is consistent with that of Mr. Sklar. *See e.g.*, Ruben Declaration ¶4−5, ECF No. 174 ("[T]o the best of my knowledge, the Company did not issue any of the shares and warrants referenced in section 1.9 of the Contribution Agreement. Specifically, I am not aware of any stock certificates pertaining to the shares to be issued under section 1.9 of the Contribution Agreement that were prepared, executed or delivered by the transfer agent. Nor am I aware of any warrants prepared, executed or delivered by the Company under that section."). Accordingly, the Court may not draw inferences from Mr. Sklar's February 3, 2014 email in Defendants' favor. Based on the remaining evidence, the Court finds Defendants breached their obligations under § 1.9 of the Agreement.

Third, concerning Defendants' obligation to file a registration statement pursuant to § 1.9, the Court finds that Defendants breached these requirements. Here, Defendants concede they did not file the registration statement. Instead, they argue they substantially performed and their full performance was excused by Plaintiffs' failure to fund the commercialization of the products. As explained above, Plaintiffs were under no obligation to fund the Products; instead, that was the responsibility of AM, a non-party. Thus, Defendants' nonperformance is not excused.

Fourth, concerning Defendants' obligation to refrain from issuing equity securities for six months, the Court finds Defendants' breached this responsibility. Pursuant to § 5.2 "[f]or a period of six months from the execution for this agreement, Arrayit shall not issue or agree to issue any equity securities. . . ." Pls.' Ex. F § 5.2. Although Defendants concede they issued convertible debentures within six months of the execution of the Agreement, they argue the issuance of these convertible debentures was not a breach because they could not have been converted until after the probationary period had expired. The Court finds this argument unpersuasive; not only did the Agreement prevent Arrayit from issuing equity securities, but also it prohibited Arrayit from "agree[ing] to issue any equity securities" during the six month period. *Id*. Accordingly, because the convertible debentures provided holders with the right to convert the debentures into equity securities, the issuance of the convertible debentures violated § 5.2 of the Agreement.

Lastly, the Court will address the topic of damages. "Under Illinois law, it is necessary to show damages—not the specific amount, but rather that the plaintiff did, in fact, suffer some damages. Merely showing that a contract has been breached without demonstrating actual damage does not suffice, under Illinois law, to state a claim for breach of contract." *TAS Distrib. Co., Inc. v. Cummins Engine Co., Inc.,* 491 F.3d 625, 631 (7th Cir. 2007) (citing *Transp. & Transit Assocs., Inc. v. Morrison Knudsen Corp.,* 255 F.3d 397, 401 (7th Cir. 2001)); *see also Stuller, Inc. v. Steak N Shake Enterprises, Inc.*, 877 F. Supp. 2d 674, 694 (C.D. Ill. 2012) (citations omitted) (Under Illinois law a "[p]laintiff must demonstrate it suffered actual damages to succeed on its breach of contract claim.").

Here, Plaintiffs do not directly argue the fourth element is satisfied. Instead, Plaintiffs contend Defendants' damages defense is negated by a sworn affidavit from Plaintiffs' attorney, a

damages report and testimony from Plaintiffs' expert. Plaintiffs further assert a damages defense cannot defeat their motion because it only seeks summary judgment as to liability. In response, Defendants argue Plaintiffs have not proven damages. However, Defendants do not make any specific arguments on this point.

As a preliminary matter, Plaintiffs' argument concerning the viability of a damages defense is incorrect and contradicted by Seventh Circuit precedent interpreting contracts arising under Illinois law. *See TAS Distrib. Co.,* 491 F.3d at 631. To succeed on their motion for summary judgment, Plaintiffs must put forth some evidence showing it suffered actual damages. Here, the record does contain evidence of actual damages as it relates to Defendants' failure to contribute the Products and to issue, amend or double warrants and shares. For example, Plaintiffs did not receive the Products, which their damages expert estimated was worth $20,550,000. Pl.'s Ex. Y at 1, ECF No. 171. Further, Plaintiff Zalcberg did not receive the 5 million shares, which Plaintiffs damages expert estimated was worth $780,000. *Id.*

However, Plaintiffs do not identify any evidence of actual damages as it relates to Defendants' failure to file the registration statement nor Defendants' issuance of convertible debentures. Concerning the latter, Plaintiffs simply allege "[D]efendants executed convertible promissory notes totaling over $600,000, precipitating a calamitous drop of the Company's stock price," Pl. Br. at 8; but, they do not specifically identify any evidence demonstrating a price decrease. Accordingly, Plaintiffs satisfy the elements of a breach of contract claim as to the obligations to contribute the Product and to issue, double, and modify warrants and stocks; hence Plaintiffs' motion for summary judgment is **GRANTED** as to these claims. Because Plaintiffs fail to sufficiently demonstrate actual damages as to the filing of the registration statement and

the issuance of the convertible promissory notes, Plaintiffs' motion for reconsideration is **DENIED** as to these claims.

## II. Counterclaims

Plaintiffs additionally seek reconsideration of Defendants' only remaining counterclaim concerning reimbursements for expenses incurred by Arrayit in developing and commercializing the Products. Of relevance, the Contribution Agreement states:

> [o]n closing AM shall not assume, or take the Assets subject to, any Arrayit liabilities or any Encumbrances except for all obligations of Arrayit arising after and to be performed after the Closing under Contracts contributed to AM ("Assumed Liabilities"). Such obligations shall not include any amounts due but unpaid as of the Closing or any claims arising due to Arrayit's performance or lack of performance or actions or omissions prior to the closing.

Contribution Agreement § 1.5. In other words, AM, not Plaintiffs, was required to reimburse Arrayit for expenses or costs that arose after the closing of the Contribution Agreement. Accordingly, because AM is not a party to the current suit and Defendants' have not sufficiently argued for piercing the corporate veil, this counterclaim must be dismissed. *See* Fed. R. Civ. P. 13(a) & (b); *see also Arch Ins. Co. v. Harleysville Worcester Ins. Co.*, 56 F. Supp. 3d 576, 583 (S.D.N.Y. 2014). Plaintiffs' motion for reconsideration is **GRANTED** as to Defendants' reimbursement counterclaim and summary judgment is **GRANTED** as to this counterclaim.

## CONCLUSION

For the reasons set forth above, Plaintiffs' motion for reconsideration is **GRANTED** in part and **DENIED** in part. In particular, Plaintiffs' motion for summary judgment as to the breach of contract claim is **GRANTED** in part and **DENIED** in part. Plaintiffs' motion for summary judgment as to Defendants' remaining counterclaim is **GRANTED**.

**SO ORDERED.**

**Dated: March 25, 2020**
  **New York, New York**                                    **ANDREW L. CARTER, JR.**
                                                            **United States District Judge**