**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------- x
**REUBEN TAUB, et al,**                                        :
                                                                :
                                                *Plaintiffs*,   :
                                                                :        **15-cv-01366 (ALC) (JLC)**
                            -against-                           :
                                                                :        <u>OPINION</u>
**ARRAYIT CORP., et al,**                                      :
                                                                :
                                **Defendants.**                :
                                                                :
                                                                :
                                                                :
-------------------------------------------------------------------- :
                                                                :
                                                                x

**ANDREW L. CARTER, JR., District Judge:**

Plaintiffs Reuben Taub, Irwin L. Zalcberg, and Irwin Zalcberg Profit Sharing Plan

commenced this action against Defendant Arrayit Corporation, and Defendants Mark Schena,

Rene Schena, Todd Martinksy, and Timothy Wong (collectively, "Individual Defendants") in the

Supreme Court of New York, County of New York, on February 4, 2015, alleging Defendants

breached a 2014 "Contribution Agreement." ECF No. 1-1. Defendants removed the case to

federal court on February 25, 2022. ECF No. 1. Defendant Ms. Schena is the former CEO of

Defendant Arrayit. On October 14, 2022, the parties filed a joint status report with the Court

stating they had reached a settlement with Defendant Arrayit and its insurance carrier Berkley

Professional Liability and the W.R. Berkley Corporation ("Berkley"). ECF No. 271-3. Ms.

Schena seeks to renege from the settlement. ECF Nos. 271-11, 273.

Plaintiffs now seek enforcement of a written, but unsigned, settlement agreement

between Plaintiffs, Defendants and Berkley. ECF No. 270. Berkley supports Plaintiffs' motion.

ECF No. 271-13. Plaintiffs argue that because Ms. Schena is no longer a party to this case, and

1

Berkley continues to support the settlement agreement, the Court should enforce the settlement agreement. *Id.*, ECF No. 271-12 at 3.

After careful consideration, because Plaintiffs, Defendants, and Berkley did not reach a binding and enforceable agreement, Plaintiffs' motion to enforce the settlement agreement is hereby **DENIED**.

## BACKGROUND

The Court assumes the parties' familiarity with the facts of the case. On March 25, 2020, the Court granted Plaintiffs summary judgment, finding that the Contribution Agreement was enforceable. ECF No. 194. In their pretrial materials, Plaintiffs sought judgment totaling $28,586,157, plus costs and disbursements, pre-judgment interest, and attorneys' fees. ECF Nos. 230-234, 237-238. The Court held a telephonic status conference on June 7, 2022 regarding the status of negotiations, and suggested Defendants consent to judgment against Defendant Arrayit for $20 million, with a trial on damages only against the Individual Defendants. On October 14, 2022, the parties filed a joint status report with the Court, announcing a settlement had been reached between Plaintiffs, Defendant Arrayit and Berkley, and that settlement negotiations with Individual Defendants were ongoing. ECF No. 271-3. The parties filed, with Defendants' confirmation, a joint status report on December 5, 2022 reporting they had reached a settlement in principle: (1) entry of judgment in favor of Plaintiffs against Arrayit on consent for $20,000,000; and (2) assignment to Plaintiffs of Arrayit's insurance policy with Berkley mandating payment to Plaintiffs for $500,000 in full satisfaction of the judgment. ECF No. 261. After the joint status report was filed on December 5, 2022, Ms. Schena sought to renege on the settlement agreement. ECF No. 271-11.

Plaintiffs argue Ms. Schena is no longer a party to this case, and her desire to renege must not prevent enforcement of the settlement agreement. On February 12, 2021 in the District Court of the Northern District of California, Judge Beth L. Freeman entered a final judgment against Ms. Schena in the case captioned *Securities & Exchange Commission v. Arrayit Corp. & Rene Schena*, prohibiting Ms. Schena "from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)]." ECF No. 271-12 at 3. Pursuant to the final judgement against her in the SEC case, Ms. Schena is then enjoined from acting as a director or officer of Arrayit. Ms. Schena claims she is now a consultant for Arrayit. ECF No. 273.

On April 14, 2023, Plaintiffs filed a motion to enforce settlement. ECF No. 270. Defendants filed their opposition consisting of a declaration by Ms. Schena on April 28, 2023, arguing they opposed enforcement of the unsigned agreement "[b]ased upon" the declaration. ECF No. 273. On May 5, 2023, Plaintiffs filed their reply. ECF No. 274.

## STANDARD OF REVIEW

"A district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it." *Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir. 1974) (internal citations omitted). This is "especially clear where the settlement is reported to the court during the course of a trial or other significant courtroom proceedings." *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 444 (2d Cir. 2005) (internal citations and quotation marks omitted).

A settlement agreement is a "contract that is interpreted according to general principles of contract law." *Id.* at 443. A "motion to enforce a settlement agreement is fundamentally a claim

for breach of contract," *United States v. Prevezon Holdings, Ltd.*, 289 F. Supp. 3d 446, 450 (S.D.N.Y. 2018) (internal quotation marks omitted) (quoting *Hendrickson v. United States*, 791 F.3d 354, 358 (2d Cir. 2015)). When a court determines that a settlement agreement was in fact reached, that agreement must be binding, and "it is an elementary principle of contract law that a party's subsequent change of heart will not unmake a bargain already made." *Omega*, 432 F.3d at 445.

Under New York law, an enforceable settlement agreement requires "an offer, acceptance, consideration, mutual assent and intent to be bound." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004). The parties must be in agreement "on all essential terms," *Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 372 (2d Cir. 2003) (citation omitted), which consists of "all the issues perceived to require negotiation," *Brown v. Cara*, 420 F.3d 148, 153 (2d Cir. 2005) (citation omitted). "When a preliminary agreement is reduced to a writing signed by the parties or their representatives, the plain language of the agreement is the best evidence of the parties' intent." *Wang v. Int'l Bus. Machs. Corp.*, No. 11-cv-02992 (VB), 2014 WL 6645251, at *3 (S.D.N.Y. Oct. 7, 2014) (citation omitted); *see also Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 322 (2d Cir. 1997). This includes agreements written in an email, *Green v. N.Y.C. Transit Auth.*, No. 15-CV-08204 (ALC) (SN), 2022 WL 2819738, at *2 (S.D.N.Y. May 10, 2022), *report & recommendation adopted*, No. 15-CV-08204 (ALC) (SN), 2022 WL 2819578 (S.D.N.Y. July 19, 2022) (quoting *Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC*, No. 04-CV-1621 (KMW) (AJP), 2005 WL 1377853, *5-10 (S.D.N.Y. June 9, 2005)); *see also Elliot v. City of N.Y.*, No. 11-CV-7291 (RWS), 2012 WL 3854892, at *2 (S.D.N.Y. Sept. 5, 2012) (finding an executed term sheet and email from defense counsel confirming agreement was sufficient to create a binding agreement). "The intention of the parties

on this issue is a question of fact, to be determined by examination of the totality of the circumstances." *Ciaramella*, 131 F.3d at 322. A plaintiff bringing a breach of contract claim bears the burden of proving the existence of a contract by a preponderance of the evidence. *Pisani v. Westchester Cty. Health Care Corp.*, 424 F.Supp.2d 710, 719 (S.D.N.Y. 2006).

"'[O]nce reached, a settlement agreement constitutes a contract that is binding and conclusive and the parties are bound to the terms of the contract even if a party has a change of heart between the time of the agreement to the terms of the settlement and the time it is reduced to writing.'" *Murphy v. Inst. of Int'l Educ.*, No. 19-CIV-1528 (ALC) (RWL), 2020 WL 6561603, at *4 (S.D.N.Y. July 27, 2020), *report & recommendation adopted*, No. 19-CV-1528 (ALC), 2020 WL 5658628 (S.D.N.Y. Sept. 23, 2020), *aff'd*, 32 F.4th 146 (2d Cir. 2022) (quoting *Elliot*, 2012 WL 3854892, at *2 (citation omitted).

"Whether a district court should apply federal or state law in order to decide a motion to enforce a settlement has not yet been resolved by . . . the Second Circuit." *Green*, 2022 WL 2819738, at *2 (quoting *Powell v. Omnicom*, 497 F.3d 124, 129 n.1 (2d Cir. 2007)) (quotation marks omitted). The Second Circuit has noted that "there is 'no material difference' between New York law and federal common law on this issue" *Id.* (quoting *Ciaramella*, 131 at 322); *see also Figueroa v. N.Y.C. Dep't of Sanitation*, 475 F. App'x 365, 366 (2d Cir. 2012) (same).

The Second Circuit has "articulated several factors that help determine whether the parties intended to be bound in the absence of a document executed by both sides." *Winston*, 777 F.2d at 80. The court considers:

> (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

*Id.* These factors "may be shown by 'oral testimony or by correspondence or other preliminary or partially complete writings.'" *Id.* at 81 (quoting Restatement (Second) of Contracts § 27 comment c (1981)). No factor is decisive. *Ciaramella*, 131 F.3d at 323. "[T]he analysis ultimately hinges on the parties' intent demonstrated through their objective communications and conduct." *In re Motors Liquidation Co.*, 580 B.R. 319, 344 (Bankr. S.D.N.Y. 2018).

## DISCUSSION

### I.    Enforceability of the Settlement Agreement

#### a.    Express Reservation of the Right Not to Be Bound

"The first factor, the language of the agreement, is 'the most important'" in considering whether the parties intended to be bound. *Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc.*, 145 F.3d 543, 549 (2d Cir. 1998) (quoting *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 72 (2d Cir. 1989); *see also Hernandez v. Fresh Diet Inc.*, No. 12-CV-4339 (ALC), 2017 WL 4838328, at *3 (S.D.N.Y. Oct. 25, 2017). The Court looks to the language of the agreement to determine whether the parties expressly reserved the right not to be bound by the agreement, and if an express reservation exists, it is given significant weight. *Garra v. Metro-N. Commuter R.R.*, No. 17-CV-01293 (ALC) (SN), 2021 WL 1536499, at *8 (S.D.N.Y. Feb. 12, 2021) (citations omitted). *See Ciaramella*, 131 F.3d at 324 (finding oral agreement unenforceable when parties expressed intent to not be bound until agreement was signed by parties); *In re Motors*, 580 B.R. at 353–54 (finding "[v]arious other aspects of the Settlement Agreement which emphasize execution, signatures, and writing, likewise support that there was an implied reservation of a right to be bound only upon execution of the written agreement."). If there is a writing between the parties "show[ing] that [defendants] did not intend to be bound," a court may "look no further than this factor." *Kaczmarcysk v. Dutton*, 414 Fed.App'x. 354, 355 (2d Cir. 2011) (citation omitted).

Here, there is a written agreement drafted and negotiated by the Parties. "It is well established that parties are bound to the terms of a contract even though it is not signed [or even written]." *Omega Eng'g, Inc. v. Omega, S.A.*, 98 Civ. 2464, 2004 WL 2191588 at *7. "[P]reliminary agreements can create binding obligations." *Adjustrite*, 145 F.3d at 548 (citations omitted).

The first factor heavily favors the Defendants. Although there is no express reservation of rights, there is evidence in the record and in the Agreement of an implied reservation of rights. In a December 5, 2022 joint status report to the Court, the parties reported that "the settlement agreement reached in principle between plaintiffs, defendants, and Berkley Professional Liability, Berkley Insurance Company and W.R. Berkley Corporation ('Berkley') is back on track with paperwork circulated for *final comment and execution*." ECF No. 271-3 (emphasis added). The correspondence to the Court makes clear that the Parties considered the Agreement nonbinding until it was executed. *See Winston*, 777 F.2d at 81 ("pending execution" language revealed an intent to reserve the right not to be bound until execution of the document.).

The text in the agreement demonstrates that the parties reserved a right not be bound until the agreement was signed. First, the agreement contains a provision which specifically references written execution: "This Agreement contains the entire agreement between the Parties. No provision of this Agreement may be waived, nor may this Agreement be amended or modified, except by an instrument in writing duly executed by both parties." ECF No. 271-1 at ¶ 6. Such language is "persuasive evidence that the parties did not intend to be bound prior to the execution of a written agreement." *Kaczmarcysk*, 414 Fed.App'x. at 355 (quoting *Ciaramella,* 131 F.3d at 324). Courts have routinely found that this language demonstrates the parties' intentions not to be bound until written execution. *Nieves v. Cmty. Choice Health Plan of Westchester, Inc.*, No.

08 Civ. 0321, 2011 WL 5533328, at *4 (S.D.N.Y. Aug. 31, 2011). Second, the agreement also refers to execution: "This Agreement may be executed in separate counterparts[.]" ECF No. 271-1 at ¶ 12. Such references to execution demonstrate an intent not to be bound until then. *See Hernandez*, 2017 WL 4838328, at *3 (finding an "Agreement may be executed in any number of counterparts" to indicate an intent by the parties to not be bound until execution); *Nieves*, 2011 WL 5533328, at *5 (same). Third, the agreement contains blank signature lines for each party. *Nieves*, 2011 WL 5533328, at *5 (citing *Ciaramella*, 131 F.3d at 324).

The parties' correspondence with the Court and language in the agreement strongly demonstrate that the agreement would not be binding barring execution by all parties. Although finding that this factor favors invalidity is enough to deny the Plaintiffs' motion to enforce settlement, the balance of the other factors also bolsters this conclusion.

### b. Partial Performance

"The partial performance factor has 'the least sway with the court.'" *Xie v. Caruso, Spillane, Leighton, Contrastano, Savino & Mollar, P.C.*, 632 F. Supp. 3d 262, 268 (S.D.N.Y. 2022) (quoting *Walker v. City of N.Y.*, No. 05 Civ. 0004, 2006 WL 1662702, at *8 (E.D.N.Y. June 15, 2006)). "Partial performance requires some actual performance of the contract" and a party "must have conferred something of value upon [the other] which [was] accepted." *P.A. Bergner & Co. v. Martinez*, 823 F.Supp. 151, 157 (S.D.N.Y. 1993). "Courts have considered various factors that indicate partial performance, including payment of at least some part of the settlement amount and mutual cessation of litigation activities." *Xie*, 632 F. Supp. 3d at 268.

Here, Defendants have not paid the settlement to the Plaintiffs. However, favoring Plaintiffs is "the fact that the parties abandoned litigation activities because they believed a settlement was imminent." *Id.* The parties' joint status reports to the Court represented that a

settlement had been reached, and as such they abandoned litigation, which demonstrates that this matter was settled. However, by not signing the agreement or initiating any payment, Defendants did not "accept" Plaintiffs' performance of sharing the necessary paperwork for signature. *See Hernandez*, 2017 WL 4838328, at *4.

The partial performance factor is therefore neutral.

### c.  No Open Material Terms

As the Second Circuit has noted, preliminary agreements can create binding obligations "when the parties agree on all the points that require negotiation (including whether to be bound) but agree to memorialize their agreement in a more formal document." *Adjustrite*, 145 F.3d at 548; *see also Winston*, 777 F.2d at 80 ("all of the terms of the alleged contract have been agreed upon."). "A settlement in principle is not final where material terms that form part of the plaintiff's consideration for dropping her legal claims are not agreed upon." *Xie*, 632 F.Supp. 3d at 269. Minor or technical changes are relevant against finding a contract binding "only if they show there were points remaining to be negotiated such that the parties would not wish to be bound until they synthesized a writing 'satisfactory to both sides in every respect.'" *Powell*, 497 F.3d at 130 (quoting *Winston*, 777 F.2d at 82–83). In *Alvarez v. City of N.Y.*, the court found the "written settlement agreement [] was substantially complete." 146 F. Supp. 2d 327, 337 (S.D.N.Y. 2001). "The parties had extensively negotiated the language of the agreement, and only a couple of items remained. While the written agreement was not signed, the terms of the agreement had been largely reduced to writing. Hence, this factor weighs in favor of enforcing the agreement." *Id.*

Here, Defendants have not pointed to any substantive points of disagreement that remained over the draft settlement agreement. "The evidence provided to the Court indicates that

the parties had agreed to all material . . . terms of the Settlement Agreement." *In re Motors*, 580 B.R. at 360. In negotiations, the parties agreed to the $500,000 settlement award. The third *Winston* factor weighs in favor of finding the Agreement enforceable and binding.

> **d.   Type of Contract**

"Settlements of any claim are generally required to be in writing or, at a minimum, made on the record in open court." *Ciaramella*, 131 F.3d at 326. Moreover, especially here, where there have been years of litigation and a year of settlement negotiations, "prudence strongly suggests that [the] agreement be written in order to make it readily enforceable, and to avoid still further litigation." *Winston*, 777 F.2d at 83.

Under N.Y. C.P.L.R. § 2104, an out-of-court settlement agreement must be in writing and signed. *Id.* However, it is an open question of whether C.P.L.R. § 2104 applies in federal court. *Hernandez*, 2017 WL 4838328, at *2 (S.D.N.Y. Oct. 25, 2017) (citing *Figueroa*, 475 Fed.App'x. at 366); *see also Green*, 2022 WL 2819738, at *2 ("Whether a district court should apply federal or state law in order to decide a motion to enforce a settlement has not yet been resolved by . . . the Second Circuit."). Further, the agreement is governed by New York law, ECF No. 271-1 at ¶ 7, and C.P.L.R. § 2104 suggests a strong preference in New York law for committing settlement agreements to writing. *See Hernandez*, 2017 WL 4838328, at *4 (citations omitted).

Courts may also look to "the complexity of the underlying agreement is an indication of whether the parties reasonably could have expected to bind themselves orally." *Ciaramella*, 131 F.3d at 326 (citation omitted). "[T]his factor weighs in favor of enforcing the agreement in situations where the agreement would normally be committed to writing, but where there is a written settlement agreement that was substantially complete." *In re Motors Liquidation Co.*, 580 B.R. at 348 (internal quotation marks and citations omitted). "This factor has low relevance here

because the parties are not disputing a purely oral agreement." *Xie*, 632 F.Supp. 3d at 269. "[T]his factor arguably favors Defendants because the settlement contemplated here is not complex: it concerns a single [$500,000] payment that would resolve all of Plaintiffs' legal claims" against the corporate Defendant. *Id.*

Overall, this factor favors enforcement of the agreement.

In considering the totality of circumstances, Plaintiffs have failed to establish that the unsigned settlement agreement is enforceable. The *Winston* factors disfavor enforcement of the agreement, as the parties did not intend to be bound prior to its execution.

**II.     Duress**

Defendants argue that even if the Court were to find the agreement to be an enforceable and binding contract, it should not be enforced because Defendants were under duress when negotiating it. However, Defendants have not sufficiently established duress.

"In New York, a contract is voidable on the ground of duress when it is established that the party making the claim was forced to agree to it by means of a wrongful threat precluding the exercise of his free will." *Doe v. Kogut*, 759 F. App'x 77, 81 (2d Cir. 2019) (citations and quotations omitted). "Findings of duress that permit a party to disown its obligations under a contract . . . are reserved for extreme and extraordinary cases." *Murphy*, 2020 WL 6561603, at *12 (citation and quotation marks omitted). The party seeking to void a settlement agreement on grounds of duress "'shoulders a heavy burden.'" *Mandavia v. Columbia Univ.*, 912 F. Supp. 2d 119, 127 (S.D.N.Y. 2012). "Courts recognize three types of duress: duress by physical compulsion, duress by threat, or duress by undue influence." *Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 403 (S.D.N.Y. 2017) (citation omitted).

To avoid enforcement of an agreement on the basis of "economic duress," a party must "demonstrate that a wrongful threat precluded the exercise of her free will and caused her involuntarily to accept the terms of the agreement." *Figueroa v. City of N.Y.*, No. 05 CIV. 9594 JGK, 2011 WL 309061, at *3 (S.D.N.Y. Feb. 1, 2011), *aff'd sub nom. Figueroa*, 475 F. App'x 365. The party "must show: (1) a threat, (2) unlawfully made, (3) which caused involuntary acceptance of contractual terms, (4) because the circumstances permitted no alternative." (citations and quotation marks omitted).

Defendants' opposition to enforcement of the agreement is merely "based upon" the declaration of Ms. Schena. ECF No. 273. This Court has already found that Ms. Schena is barred from acting as an officer for Arrayit based upon the final judgment in the *SEC* matter. ECF No. 271-12 at 3. Besides Ms. Schena's declaration, Defendants do not make any arguments against the enforcement of the settlement agreement based on duress.

Even if the Court were to consider Defendants' opposition to adopt Ms. Schena's allegations by reference, her description of the settlement discussions does not establish duress on any ground. Ms. Schena argues "Defendants entered into settlement negotiations with Plaintiffs under extreme financial duress." ECF 273 at 3. "The disclosure of Defendants' extremely poor financial condition has given Plaintiffs unequal bargaining power over Defendants." *Id.* In her description, the parties were not subject to physical compulsion, and feeling pressured is insufficient to establish duress. *Murphy*, 2020 WL 6561603, at *13 (collecting cases). The circumstances described are not "extreme" nor "extraordinary, *id.* at 23, nor do Defendants establish circumstances that prohibited them from exercising their free will to decline the settlement.

**CONCLUSION**

For the reasons set forth by the Court, Plaintiffs' motion to enforce the settlement agreement, ECF No. 270, is hereby **DENIED**.

**SO ORDERED.**

**Dated:**      **December 4, 2023**
               **New York, New York**              **ANDREW L. CARTER, JR.**
                                                        **United States District Judge**